CRAMER, receiver, &c., *vs.* BLOOD.

Although one may have intended to defraud the creditors of another by taking and converting his property into cash, such intention will be rendered harmless by his delivering the proceeds of the sale to the debtor, or his wife who is his authorized agent.

And if he subsequently receives a portion of such proceeds, with like intent, from the debtor's agent, for the use of the debtor and his wife, and to be handed over to them, or for their use, as they may want, such intent will be rendered harmless by his paying over the money to creditors, or to the debtor, or his wife, by his directions.

A settlement between such person and the debtor, and payment of the amount due for such property, or its proceeds, will discharge the former from any liability to creditors of the owner who subsequently obtain judgments against the latter.

A creditor at large of another is not in a situation to question the *bona fides* of a transfer of the debtor's property, or the right of a third person to take such property, or his right to retain the proceeds of its sale.

The statute in relation to conveyances of a debtor's property with the intent to delay, hinder and defraud his creditors, has no application to a fraudulent transfer of such property by any one except the debtor; and no one can avail himself of the statute except a creditor who is hindered, delayed or defrauded thereby. A creditor at large cannot be hindered by such transfer, within the purview of the statute.

Where the cause of action set out in the complaint was that the defendant had in his possession either the property of the plaintiff's judgment debtor, or its proceeds, for which he had never accounted, and the referee found that before the plaintiff's judgment was rendered, the defendant had fully accounted with the debtor for all the property, and proceeds of property in his possession; *Held* that the referee should have granted a nonsuit.

APPEAL from a judgment entered upon the report of a referee.

The complaint alleged that on the 12th day of October, 1858, one John W. Smith recovered a judgment in this court against William A. Lowd, for $304.25 damages and costs, upon a bona fide debt owing by said Lowd to said Smith previous to July 1st, 1857; that an execution upon said judgment, against the property of said defendant, Lowd, was duly issued to the sheriff of the county of Saratoga, and delivered on or about October 14th, 1858, which execution was afterwards returned by said

sheriff wholly unsatisfied; that such proceedings were afterwards had in that action, supplementary to said execution, before the county judge of Saratoga county, pursuant to chapter 2 of title 9 of part 2 of the Code of Procedure, that the plaintiff in this action, by an order of the said county judge, made November 20th, 1858, was duly appointed receiver of the property of said Lowd; that all of the property of the said Lowd, not exempt from execution, was thereby directed to be applied towards the payment of said judgment, and that the plaintiff be allowed $30, costs of these proceedings; that at the time of the issuing of said execution, and ever since, the said Lowd had resided in the county of Saratoga; that the said plaintiff had filed the security required by said order, and the said property had become vested in him as such receiver, and he had given notice thereof to the defendant.

The plaintiff further stated, upon information and belief, that with intent to cheat and defraud the said Smith and the other creditors of said Lowd, the defendant took from said Lowd and carried away, during the fall of 1857 and the winter following, a large quantity of buckwheat, oats, potatoes, pork, hay, chickens, calves and other property belonging to said Lowd, and the defendant converted the same to his own use, and had never paid the said Lowd therefor; that since July 1st, 1857, the defendant had also received from said Lowd and his agent, large sums of money, the property of said Lowd, without any consideration, and with a view of defrauding the said Smith and preventing him from collecting said debt. That the said Lowd had pretended to sell said property to Blood, and and had pretended to give him releases for said causes of action, but the plaintiff averred that all of the said sales and releases were executed with intent to defraud the said Smith out of his said debt.

The plaintiff further stated that the defendant had received property and money of said Lowd to an amount

Cramer *v.* Blood.

exceeding $400, with intent to defraud the said Smith, and had never accounted for the same. That the plaintiff had made application to said Blood to account for said property, but he neglected to do so. That said judgment remains wholly unpaid, and the said Lowd has no other property out of which the same can be collected. Wherefore the plaintiff demanded judgment that said sales and releases, by said Lowd to the defendant, be declared fraudulent and void as against said judgment, and that the property and money received by the defendant be declared liable for the payment of said judgment, and that an account be taken of said property, and that the said defendant be adjudged to pay the value thereof to the plaintiff, to satisfy the said judgment and costs; and for general relief.

The defendant, by his answer, for a first defense, denied that during the fall of 1857, or the winter following, or at any other time, he took from said Lowd, or carried away with intent to cheat or defraud the said Smith or other creditors of Lowd, any buckwheat, oats, potatoes, pork, hay, chickens, calves or other property belonging to said Lowd. He also denied that he at any time converted any of said property to his own use, or that he was in any way indebted to said Lowd therefor. But, on the contrary thereof, he averred that he had paid to said Lowd the full value of all property which he had at any time directly or indirectly received from him, except one single harness left by the said Lowd on the premises of the defendant, in the summer of 1858, which said harness is still the property of said Lowd, and ready to be delivered to the plaintiff; and the defendant averred that he offered, by and through his agent and attorney in this action, to deliver said harness to the plaintiff before this action was commenced. He also denied that since July 1st, 1857, or at any other time, he received from said Lowd, or his agent, any sum or sums of money, the property of said

Lowd, without any consideration, or with a view of defrauding Smith, or preventing him from collecting his said debt against Lowd. He also denied that Lowd ever pretended to sell him any property of any sort or description, with the knowledge of the defendant, with intent to defraud Smith out of said debt, or that Lowd ever pretended to give him releases for said property or for any cause or causes of action, with the knowledge of the defendant, with intent to defraud Smith out of his said debt. As to the intent of the said Lowd, as charged in the complaint, the defendant had no knowledge or information sufficient to form a belief, but he positively averred that if any such intent existed in the mind of Lowd, it was unknown to the defendant, and that he did not participate, in any of his dealings with Lowd, in any such intent. The defendant also denied that he had received property and money of Lowd, to an amount exceeding $400, or any other amount whatever, with intent to defraud Smith. He also denied that he had received any money or property of Lowd for which he had failed or refused to account; but on the contrary thereof, averred that he had fully accounted for all money and property of said Lowd which at any time came to his possession or control. As to the allegations of the complaint in relation to the amount due from Lowd, before and at the time the alleged judgment of Smith was obtained against him, and the amount remaining unpaid thereon, the defendant had no knowledge or information sufficient to form a belief.

For a second defense, the defendant alleged that on or about the 1st day of September, 1858, he and the said William A. Lowd accounted together and made a full, fair and final settlement of all accounts, dealings, claims and demands between them, upon which accounting and settlement a balance was found due from said Lowd to the defendant, which balance still remains unpaid.

For a third and partial defense, the defendant alleged

Cramer *v.* Blood.

that the pork mentioned in the complaint was taken to market by him at the request of Lowd and his wife, and also by request of Smith; that he sold said pork and returned the proceeds thereof to the wife of said Lowd, by his directions; that the said pork was claimed by Smith, by virtue of a chattel mortgage executed to him by Lowd; that Smith afterwards commenced an action against the defendant for taking and carrying away and converting said pork, before this plaintiff, who was and is a justice of the peace for the town of Waterford, in the county of Saratoga, in which action judgment was duly given by said justice, in favor of said plaintiff and against the defendant, for the value of said pork, which judgment had been affirmed on appeal to the county court of Saratoga county, and judgment therein duly given by said court in favor of Smith, against this defendant.

And for a fourth and partial defense, the defendant alleged that in the fall of 1857, Lowd was possessed of a yearling colt, and that said colt was claimed by Smith, under and by virtue of the chattel mortgage aforesaid; that said colt was for a short time in the possession of this defendant; that Smith commenced an action against this defendant, in the Supreme Court, for the recovery of said colt, with damages for her detention; that in said action a judgment was obtained by the said Smith against this defendant for the recovery of said colt, if a recovery thereof could be had, and if not, for $60, the value of said colt, with damages and costs; that said judgment was duly entered and docketed in the office of the clerk of Saratoga county, and an execution thereon duly issued to the sheriff of Saratoga county; that the said sheriff did not recover said colt, and that this defendant paid to William B. Harris, the under-sheriff of said county, in whose hands the said execution was, and before the return day thereof, the full amount of said judgment and execution, and that nothing is now due thereon to the said Smith.

The action was referred to a referee, and tried before him; who found the following facts:

*First.* That John W. Smith, by a written lease executed 25th March, 1857, rented unto William A. Lowd his farm in Easton, Washington county, from April 1st, 1857, to April 1st, 1858, for the rent of $450, payable as follows: $225 December 1st, 1857, and $225 April 1st, 1858.

*Second.* That Lowd gave to Smith a chattel mortgage upon a colt, certain hogs, and other personal property, as security for the payment of said rent, and went into the possession of the premises and occupied the same under said lease.

*Third.* That on the 12th day of October, 1858, Smith recovered a judgment against Lowd for $304.25 damages and costs, for the balance of said rent, as stated in the complaint in this action. That execution was issued upon said judgment, and the same was returned, and supplemental proceedings had therein and the plaintiff appointed receiver therein, and accepted the trust and gave the security, as stated in the complaint.

*Fourth.* That said judgment remained wholly unpaid, and Lowd had no property out of which said judgment could be collected on execution, at the time said execution was in the hands of the sheriff.

*Fifth.* That about the 12th day of October, 1857, and before any part of said rent became due, with intent to defraud said Smith, the defendant took and carried away a quantity of potatoes, buckwheat, pork, hay and calves, and other property of said Lowd, and converted all of his chattel property liable to execution into money.

*Sixth.* That with like intent the defendant soon after handed over the money arising from the sale of said property, by direction of William A. Lowd, to Catharine Lowd his wife.

*Seventh.* That before the defendant received or disposed of any of the property above mentioned, William A. Lowd

Cramer *v.* Blood.

was taken sick, and continued sick until in December, 1857, during which time the control and management of his property was by him placed in the hands of the said Catharine Lowd, his wife.

*Eighth.* That with like intent the defendant, afterwards and about November 25th, 1857, induced the said Catharine Lowd to place a portion of said money, amounting to $200, in the hands of the defendant, for the use of said Lowd and wife, and to be handed over to them or for their use as they might want.

*Ninth.* That afterwards, and about March 15th, 1858, the defendant became security to one Mancius for the rent of a farm leased by Lowd of him, to the amount of $120 ; but the lease thereof was taken in the name of the said Catharine. That on the 1st day of April, 1858, the defendant paid to said Mancius $100 on account of said rent, and the balance of said rent was paid by the said Catharine about April 15, 1858.

*Tenth.* That about December 12, 1857, Smith commenced an action against Blood, in a justice's court, charging Blood with fraudulently selling the hogs above mentioned, and impairing his security upon his chattel mortgage, and recovered a judgment thereon for $60 damages, besides costs, January 16th, 1858, for the value of said hogs, less the value of killing and carrying the same to market. That the defendant appealed from said judgment to the Saratoga county court, where the same was affirmed December 11, 1858, and the said judgment, and the costs of said appeal, were collected, on execution, from the defendant in March, 1861.

*Eleventh.* That Smith commenced an action against Blood, in the Supreme Court, in March, 1858, for the recovery of said colt, and on the 30th day of August, 1858, recovered a judgment against said defendant for the pos-

session of said colt, with $5 damages and $55.13 costs, which judgment was collected of Blood on execution.

*Twelfth.* That the defendant also paid over to Charles Moore $31.50 upon Lowd's note, upon which Blood was security, and which note and security were given prior to the defendant's receiving or selling any of the property of Lowd above mentioned.

*Thirteenth.* That from the 25th of April to the 25th of May, 1858, both days inclusive, the defendant paid to Lowd in cash, and to his wife, at his request, and sold to him goods, wares and merchandise, to the amount of $20.60.

*Fourteenth.* That during the illness of the said Lowd, in the fall of 1857, the defendant performed work, labor and services for the said Lowd, in gathering and marketing the property above mentioned, to the amount and which were of the value of $25, for which he has received no compensation.

*Fifteenth.* That this action was commenced on the 4th day of December, 1858, in the name of the receiver above mentioned.

As conclusions of law, the referee found the following:

1st. That the payment to Mancius of $100, on the 1st day of April, 1858, together with the sum of $20.60 for money paid and goods sold to Lowd by the defendant, between April 25th, and May 25th, 1858, afforded no protection to the defendant against the claim of Smith, to have satisfaction of his said judgment, to the extent and out of the money in the hands of said defendant belonging to Lord.

2d. That the defendant should be allowed the $60 damages paid upon the pork judgment, with the sum of $31.50, paid upon the Ensign note, together with the sum of $25 for services, amounting in all to the sum of $116.50, and that the same should be deducted from the $200 in his hands, leaving the sum of $83.50 in the hands of said defendant.

Cramer v. Blood.

3d. That the plaintiff herein, as receiver, was entitled to have a judgment against said defendant for the sum of $83.50, with the interest thereon from April 1st, 1858, amounting in all to the sum of $133.50, with the costs of this action.

Judgment being entered accordingly, the defendant appealed.

*A. Pond*, for the appellant.

*E. F. Bullard*, for the respondent.

*By the Court*, ROSEKRANS, J. The facts found by the referee do not sustain his conclusions of law, or the judgment rendered in the action. If the defendant intended to defraud the creditors of Lowd by taking and converting the property of Lowd into cash, such intent was rendered harmless by his delivering the proceeds of the sale to Lowd or his wife, who was his authorized agent; and if he subsequently received a portion of such proceeds, with like intent, from the agent of Lowd, for the use of Lowd and his wife, and to be handed over to them, or for their use as they might want, such intent was rendered harmless by his paying over the money to Lowd's creditors or to Lowd or his wife by Lowd's direction. The creditors of Lowd could not be injured by the defendant's possession of the property of Lowd, or his sale of such property, or his possession of the proceeds of such sale. Either could be reached in the hands of the defendant by any creditor who was in a condition to seize the property under execution against Lowd, or its proceeds under proceedings supplementary to execution or creditor's suit. Besides, it appears from the proceedings of the referee, that while any of Lowd's property, or the proceeds of its sale, were in the possession of the defendant, the creditor upon

whose judgment the plaintiff was appointed receiver, was only a creditor at large of Lowd, and was not in a situation to question the *bona fides* of the transfer of the property of Lowd, nor the right of the defendant to take his property, nor his right to retain the proceeds of its sale. And whatever wrongs may have been committed by the defendant in relation to Lowd's property or its proceeds, it appears, from the findings of the referee, that they were fully settled between Lowd and the defendant before the judgment of Smith was obtained. This settlement and payment of the amount due to Lowd discharged the defendant from any liability to the creditors of Lowd, who subsequently obtained judgment against him. The statute in relation to conveyances of a debtor's property, with the intent to delay, hinder or defraud his creditors, has no application to a fraudulent transfer of such property by any one except the debtor, and no one can avail himself of the statute except a creditor who is hindered, delayed or defrauded thereby. A creditor at large cannot be hindered by such transfer, within the purview of the statute referred to. The referee should have granted a nonsuit, as asked for by the defendant, for the reason that the evidence did not show any money or property of Lowd in the possession of the defendant at the time the judgment of Smith was obtained, and for the reason that it appeared that the defendant had previously fully accounted with Lowd for all property or money received from him or his wife. The cause of action set out in the complaint was, that the defendant had in his possession either the property of Lowd or its proceeds, for which he had never accounted; and this was the only cause of action for which the plaintiff could recover. And after the referee had found that before judgment was rendered against Lowd the defendant had fully accounted with Lowd for all the property and proceeds of property of Lowd in the defend-

ant's possession, there remained no cause of action against the defendant, the settlement not having been found to have been unfair or fraudulent.

The judgment should be reversed and a new trial or-. dered, with costs to abide the event.

