### GREASON v. HOLCOMB et al.

(Supreme Court, Appellate Division, Second Department. April 23, 1909.)

1. APPEAL AND ERROR (§ 220*)—PROCEEDINGS BELOW—OBJECTIONS—REPORT OF REFEREE.

    If appellant had grounds for objecting to a referee's report because his findings of fact and conclusions of law were not stated separately, he should have raised the point below by a motion to refer the report back for correction, and not having done so, and having acted on the report, he cannot raise the question first on appeal.

    [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1325, 1330; Dec. Dig. § 220.*]

2. FRAUDULENT CONVEYANCES (§ 174*)—RIGHTS OF PARTIES.

    Testator conveyed property to defendant, his housekeeper, to evade payment of a judgment, under an agreement for a reconveyance, which had not been made when testator died. Thereafter his executor induced defendant to deed the property to him by telling her that it did not belong to her, but to the estate, and that the conveyance was necessary to protect her interest as legatee under testator's will. The conveyance was made to him individually, and not as executor; he claiming that he took title in his own name to prevent the collection of the judgment. *Held* that, defendant's legal title being perfect, the conveyance to the executor individually, being made to perpetuate the original fraud by testator, was a fraud upon defendant under the circumstances, and in view of the fraudulent inception of the conveyance by testator, and of the fact that defendant was not an intentional party thereto, as shown by her willingness to restore the property to the estate, equity would not give to the execu-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tor individually, as against defendant, the surplus of the property on a foreclosure sale.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Dec. Dig. § 174.*]

Appeal from Order on Report of Referee.

Action by Minnie Lambert Greason against Charles M. Holcomb and others. From an order confirming the report of a referee distributing a surplus on the sale of property in foreclosure, certain defendants appeal. Affirmed.

Argued before HIRSCHBERG, P. J., and WOODWARD, JENKS, RICH, and MILLER, JJ.

William E. Warland, for appellants.
John McCormick, for respondent Whelpley.

WOODWARD, J. There are two claimants to the surplus arising in the foreclosure sale in this action—Charles M. Holcomb, who held the legal title of record to the premises at the time of the sale, and Harriet E. Whelpley, the grantor in the deed by which Holcomb held title. The claim of the latter is that the deed to Holcomb was procured from her by fraud and misrepresentation, and this contention was upheld by the learned referee, and by the court in confirming his report.

It is urged on this appeal that the report of the referee did not conform to the provisions of the statute, in that there are no separate findings of fact and conclusions of law, and that consequently the order cannot be sustained. It does not appear to be necessary to go into this question at this time, for the reason that the objection comes too late. The appellant has acted upon the report of the referee without objecting to the form of the determination. If he was not satisfied with the form, a motion to have referred the same back to the referee for correction would have raised the point, and, if necessary, the error could have been cured there. This same question was referred to a referee prior to the one whose decision is now under review, and the report made in that instance in favor of the claimant Holcomb was refused confirmation. The evidence appears to have been practically the same before the present referee, and the report has been confirmed, holding the surplus belongs to the claimant Whelpley.

It appears that one Charles Cranston owned the premises out of which this surplus arises; that the claimant Holcomb is his nephew, and one of the executors of his last will and testament, while the claimant Whelpley was his housekeeper during several years of his lifetime and at his death. Some time prior to his death Cranston had some trouble with a man by the name of Glass; a litigation between the two resulting in a judgment against Cranston. To evade payment of this judgment it is claimed that Cranston conveyed the premises, 563 Quincy street, to the claimant Whelpley, under an agreement that it should be reconveyed at the request of Cranston, and at the same time she made a will conveying the premises to the claimant Holcomb; it being claimed that this was a precautionary measure to insure the transfer of the property in the event of death before Cranston should be

willing to appear as the owner. Cranston died in September, 1904, with the title to the premises still vested in the claimant Whelpley, who continued to occupy the same. At a time subsequent to the death of Cranston, Holcomb and one Grimes, his coexecutor under Cranston's will, went to the claimant Whelpley with a deed already prepared, and represented that they were acting under advice of counsel, and requested her to sign the deed; Holcomb telling her that it was necessary for him to protect her interests, she being a legatee under the will to the extent of $2,000. Holcomb had lived in Cranston's family during the years that Miss Whelpley acted as housekeeper, and down to the time that he was married, and he was a guest of Miss Whelpley at the time the deed was executed. Under these circumstances the deed to Holcomb was made, though the delivery seems to have been open to serious question.

It is in evidence that Miss Whelpley was told that she did not own the property, that it was placed in her name to avoid the Glass judgment, and that it was her duty to convey the same to the estate; but the deed was made to Holcomb personally, and he stands in this proceeding demanding the surplus money in his own right, though he did, after the proceeding was well along, consent to make an assignment of the fund to Grimes and himself as executors. But his right to the surplus moneys is claimed personally, not as an executor, and, whatever we might conclude as to the law of this case, we are persuaded that a court of equity is not bound to hold that Holcomb has established a right to this fund. He secured the deed from Miss Whelpley under the claim that the premises belonged to the estate. The deed was not to him in his representative capacity. It was to him personally. This deed was prepared, not at the request of Miss Whelpley, but at the request of Holcomb, and it was executed by Miss Whelpley upon the ground that it belonged to the estate. Holcomb has never recognized the right of the estate until it seemed necessary under a ruling of the referee to make the record straight, and the whole transaction was such as to cast discredit upon the claim of Holcomb.

But way back of it all was the fraudulent effort of Cranston to defeat the satisfaction of a judgment. He choose to place the title of this property out of himself for the purpose of working a fraud, and the claimant Holcomb, representing to the claimant Whelpley that it was her duty to restore the premises to the estate, took a deed, as he now claims, in his own name, for the purpose of perpetuating the original fraud. He took it in his own name to prevent the collection of the judgment, which he said Cranston did not regard as just, and now he asks a court of equity to hold that he is equitably entitled to the surplus money in his individual capacity. The claimant Whelpley had a good legal title. She never intended to make and deliver a deed of these premises to the claimant Holcomb personally, and if the latter was engaged in an effort, as appears from his own contentions here, to perpetuate the fraud of Cranston by taking title in his own name, this was a fraud upon Miss Whelpley, who was told that it was necessary to make this transfer for the protection of her own interests as a legatee under the will, and that the property belonged to the estate.

Taking all of the matters into consideration, we are not prepared to hold that Holcomb has shown an equitable right to the surplus moneys, and the claimant Whelpley does not appear to have intended sharing in the fraud; for her action in restoring the premises to the estate, at a time when the judgment was still outstanding, is sufficient to exonerate her. It was Holcomb who attempted to perpetuate the original fraud by fraudulently taking the title in himself under a claim that it was being done for the estate. We think the order appealed from has properly disposed of the question of ownership of the surplus moneys, and that the appellant has no ground for complaint.

The order appealed from should be affirmed, with costs. All concur.