PERCIVAL WILDS, as Trustee in Bankruptcy of WINFIELD SCOTT NORRIS, Plaintiff, *v.* JAMES R. WILLISTON and Others, Defendants.

Supreme Court, New York County, December 30, 1926.

Bankruptcy — action by trustee in bankruptcy to recover payments made by defendants to broker who operated through bankrupt — broker was actual owner of bankrupt — defendants upon learning that broker was conducting bucket shop closed his account and drew check to his order — broker diverted to his own use moneys paid him by defendants — no evidence of conspiracy by defendants to defraud — cause of action for conspiracy is not vested in trustee in bankruptcy — verdict directed for defendants.

Defendants, members of the New York Stock Exchange, at the instigation of one of their managers, opened an account for a broker, who had previously arranged with plaintiff's bankrupt to permit him to open and operate a brokerage business under an assumed name by use of said bankrupt's name. Substantial sums of money were accruing to the credit of said broker's account on defendants' books, when, upon information supplied by the Stock Exchange to the effect that said broker was conducting a bucket shop, defendants notified him to close his account and drew a check to his order for the balance standing to his credit. The broker diverted to his personal use moneys of the business and decamped, whereupon the creditors of the bankrupt filed a petition in

bankruptcy. The complaint of the plaintiff, who, as trustee of said bankrupt, sued to recover a portion of the amount paid to the broker by defendants, or, in the alternative, for the amount paid to the broker upon the closing of his account, which predicates the first cause of action on " an actual consummated agreement to defraud the public, the bankrupt and his creditors " by enabling the broker to operate a bucket shop, must be dismissed in the absence of evidence showing such a conspiracy. No cause of action of this nature vested in the trustee in bankruptcy. The rights of specific creditors who lost by reason of the operation of the bucket shop by the broker are not shown by the proof, and in no event would they pass to said trustee. The bankrupt was a mere dummy for the broker, and in every substantial respect the moneys paid to said broker were his.

A second cause of action, based on the theory that defendants were chargeable with notice that the broker was transferring to them moneys in excess of authority received by him from the bankrupt, and that, therefore, they are liable for the moneys returned to said broker and diverted by him, cannot be sustained. The receipt by the defendants of checks to their own order made by the bankrupt for the credit of the broker did not put them upon notice or charge them with the duty of returning the moneys to the bankrupt. Any inquiry made by defendants would have developed that the broker was the real owner of the business and liable as such for its debts and obligations:

A third cause of action, predicated on the claim that the payment on the closing of the account by check to said broker, made defendants participants in a transfer in fraud of creditors cannot be sustained, for the very fact that the payment was made, not only to the debtor, but to the debtor who was both the attorney in fact for and the actual owner of the bankrupt brokerage house, accentuates the propriety of the payment to him.

ACTION by trustee in bankruptcy to recover payments alleged to have been made with intent to defraud.

*Ewing & Voorhees [Tracy S. Voorhees* and *Joseph Day Lee* of counsel], for the plaintiff.

*Sullivan & Cromwell [John Foster Dulles* and *Emery H. Sykes* of counsel], for the defendants.

PROSKAUER, J. One Rowntree, a man of questionable business antecedents, desiring to open a brokerage business under another's name, made an arrangement with W. Scott Norris, by which Norris filed a certificate that he was doing business under the name of W. Scott Norris & Co., executed a deed of trust to the effect that all the property and assets of W. Scott Norris & Co. were the property of Rowntree and gave to Rowntree a complete general power of attorney. Rowntree thereupon opened a brokerage office, apparently engaged in general bucketing, diverted to his personal use moneys of the business and decamped. The creditors thereupon filed a petition in bankruptcy against W. Scott Norris & Co. and the plaintiff is the trustee in bankruptcy. The defendants are brokers trading upon the New York Stock Exchange and

the New York Cotton Exchange. The manager of their cotton department, Mr. Searles, introduced Rowntree as a southern planter who desired to open an account. Rowntree paid into this account to his own credit various sums of money, at times by check of W. Scott Norris & Co. drawn to his own order and at other times by checks of W. Scott Norris & Co. drawn directly to the order of the defendants. Rowntree's speculations were successful and substantial sums of money accrued from time to time to the credit of his account on the books of the defendants. Eventually Williston & Co. were informed by the Stock Exchange of facts from which Mr. Williston inferred that Rowntree was conducting a bucket shop. They thereupon notified him to close the account and drew a check to his order for the balance standing to his credit.

The Cotton Exchange rules forbid a member to give " continuous quotations to outsiders," the phrase meaning quotations so continuous as to enable the outsider himself to conduct a brokerage business. In fact while frequent quotations were given to Rowntree, I do not believe they were continuous within the meaning of the rule, though in my view, as hereafter expressed, this conclusion will become immaterial. It is also clear that Searles called from time to time at the office of W. Scott Norris & Co. where Rowntree was located and saw Rowntree there. I find no evidence whatever from which to infer that prior to the notice from the Stock Exchange he knew or had reasonable ground to know that Rowntree had any fiduciary or other relationship with W. Scott Norris & Co. It is most usual for professional traders to make their offices with brokerage firms and the mere presence of Rowntree in the office of W. Scott Norris & Co. was not sufficient to charge Searles with notice of any participation by Rowntree in the Norris business. This conclusion will also hereafter develop to be immaterial.

The plaintiff sues to recover the sum of $75,496.20, which is that portion of the amounts paid out to Rowntree by Williston & Co. which Rowntree did not deposit in the W. Scott Norris & Co. account but diverted to his own use; and, failing complete success in the assertion of this claim, asks judgment for the sum of $45,496.50, the amount paid to Rowntree upon the closing of the account. There are three causes of action which will be considered seriatim. The first two relate to the entire claim, the third relates only to the claim for $45,496.50.

The first cause of action is predicated substantially as the plaintiff's brief states " on an actual consummated agreement to defraud the public, the bankrupt and his creditors by enabling

Rowntree to run a bucket shop." I find no evidence of such a conspiracy. Moreover, no cause of action of this nature is vested in the trustee in bankruptcy. The first inquiry is whether Norris himself, in the absence of bankruptcy, would have had any cause of action against Williston & Co. under these allegations. He certainly would have had no right of action directly for the moneys paid by Rowntree to Williston & Co. because he did not own them. He was a mere dummy for Rowntree and in every substantial respect the moneys were Rowntree's. The most that plaintiff can claim that Norris could have sued for would be any liability for bucketing imposed on him by reason of a conspiracy to bucket entered into by Williston & Co. and Rowntree. But the proof proceeds upon no such theory and there is no evidence of specific liability on Norris by reason of bucketing as distinguished from such loss as was sustained by reason of the diversion of moneys. The rights of the specific creditors who lost by reason of bucketing are likewise not shown by the proof and in no event would those rights pass to the trustee in bankruptcy. The opinion of Mr. Justice MARTIN in *Barnes* v. *Hirsch* (215 App. Div. 10; affd., 242 N. Y. 555) is conclusive upon this point. For these reasons the first cause of action cannot be sustained.

The second cause of action is upon the ground that Williston & Co. were chargeable with notice that Rowntree was transferring to them moneys in excess of authority received by him from the bankrupt and that, therefore, they are liable for the moneys returned to Rowntree and diverted by him. In support of this cause of action the plaintiff urges that the receipt by Williston & Co. of checks to their own order made by W. Scott Norris & Co. for the credit of Rowntree put them upon notice and charged them with the duty of seeing that these moneys were held for or returned to W. Scott Norris & Co. as distinguished from Rowntree. The long line of cases on this general subject has been recently digested and limited in the opinion of CARDOZO, J., in *Whiting* v. *Hudson Trust Co.* (234 N. Y. 394). It is there held that a depositary is liable where it receives the check of a corporation from an officer either indorsed by him or drawn to him for his own account. Cognate lines of cases are also referred to and the opinion states: " The cases imposing liability in such circumstances lay down, however, a strict and at times a harsh rule, and are not to be extended."

Assuming that Williston & Co. here were placed upon inquiry by receiving checks signed by W. Scott Norris & Co. payable either to themselves or to Rowntree for Rowntree's credit, inquiry

42

would have disclosed to them that Rowntree was the real owner of the business and clearly liable for its debts and obligations, that Norris was a mere dummy, and that in fact it made not the slightest difference to Rowntree whether he drew these checks directly or drew them, as he had a perfect right to do under the power of attorney and the deed of trust, to his own order and then transferred the moneys by his own check to Williston & Co. There is an additional circumstance, however, which justified them in omitting to make inquiry. It is a matter of general knowledge that traders upon the Stock and Cotton Exchanges will frequently take a check from one brokerage house for their credit upon the books of another brokerage house. On the face of the transaction that was all that these transfers of moneys from W. Scott Norris & Co. appeared to Williston & Co. to be. They were neither put upon inquiry nor would inquiry have disclosed anything like the diversion of the funds of a principal because in fact Rowntree was the principal.

The third cause of action for $45,496.50 is predicated upon the claim that the payment upon the closing of the account by check to Rowntree made Williston & Co. participants in a transfer in fraud of the creditors of W. Scott Norris & Co. They were in fact but a mere conduit. It would not have made the slightest difference whether this check was drawn to Rowntree or to W. Scott Norris & Co. If Rowntree wished to divert it, he had the complete power to do so immediately upon the receipt of the check even if the check had been made to W. Scott Norris & Co. Moreever, even a fraudulent grantee relieves himself of liability if he returns the property to his fraudulent grantor under circumstances that fall short of making him a party to a conspiracy to defraud. (2 Moore Fraudulent Conveyances, 681; *Cramer* v. *Blood,* 57 Barb. 155; affd., 48 N. Y. 684; *Greason* v. *Holcomb,* 131 App. Div. 868; affd., 196 N. Y. 571.) What the grantor thereafter does with the money is no concern of the grantee's. (*Armstrong* v. *American Exchange Nat. Bank,* 133 U. S. 433, 466.) While this authority does not deal directly with a fraudulent conveyance, it does deal with a situation similar to the one here presented in the respects hereafter noted. Here Williston owed this money to Rowntree. Shortly before the time of the repayment there is no credible evidence that Williston & Co. knew that the payment belonged to Norris & Co. or that Rowntree had been trading with the moneys of that firm or was connected with it. In the incurring of the debt, therefore, Williston & Co. were not at all coconspirators with Rowntree. The knowledge that they thereafter acquired was that Scott Norris & Co. was the same as Rowntree, who was doing

business under that name, that they were undesirable to do business with and inferably were running a bucket shop and that they were advertising throughout the South some connection with Williston & Co.   The receipt of this information charged Williston & Co. with no duty to creditors and armed them with no defense against the payment of an admitted debt to Rowntree.   They owed Rowntree this money and they had to pay it exactly as the debt had to be paid in the *Armstrong* case.   The fact that the payment was made not only to the debtor, but to the debtor who was both the attorney in fact for and the actual owner of Scott Norris & Co., accentuates the propriety of this payment.   Even if the significance of the separate identity of Scott Norris & Co. were pressed to the point contended for by the plaintiff, the defendant is still entitled successfully to urge that it paid this money to Scott Norris & Co.'s general agent.

Verdict directed for the defendants.