PERCIVAL WILDS, as Trustee in Bankruptcy of WINFIELD SCOTT
NORRIS, Trading as SCOTT NORRIS & COMPANY, Respondent, v.
LEBANON NATIONAL BANK, a Corporation, Appellant.

First Department, March 4, 1927.

Banks and banking — action by trustee in bankruptcy to recover funds
deposited by alleged agent of bankrupt in name of third person and
withdrawn by alleged agent for his personal use — defendant bank is
not liable to trustee on theory of failure to make proper inquiry —
inquiry would have shown either that alleged agent possessed full
authority to deposit bankrupt's checks and withdraw amounts or that
he was in fact principal — recovery cannot be had on theory of fraudu-
lent transfer through medium of withdrawal from bank, for bank was
not transferee — transfer if any was to third person in whose name
funds were deposited.

This action is by a trustee in bankruptcy to recover moneys deposited in defendant
bank by an alleged agent of the bankrupt and later withdrawn by the agent for
his own personal benefit. It is brought on the theory that the bank should have
made proper inquiries and have ascertained that the agent was exceeding his
authority. The plaintiff cannot recover on that theory. The evidence shows
that the alleged agent made an arrangement with the bankrupt to use the bank-
rupt's name for conducting a business which subsequently turned out to be a
bucket shop. The bankrupt gave to the alleged agent full power of attorney to
draw and indorse checks for legitimate purposes of the business and not other-
wise. The alleged agent actually conducted the entire business, the bankrupt
not even having the right to withdraw funds, for he did not have any signature
card in the bank in which the regular deposits were made. When the alleged
agent opened the deposit in the defendant bank in the name of a third person, a
corporation, the defendant required evidence of his authority to use the bank-
rupt's checks for such deposit and evidence of his authority to withdraw the
funds so deposited in the bank. The plaintiff cannot recover on the theory
outlined, for if the bank had made inquiry it would have ascertained either that
the alleged agent did have full authority to make the deposits and to withdraw
the money and was not exceeding his authority, or, if it had extended its inquiry,
it would have ascertained that the alleged agent was in fact the principal, and
that the bankrupt did not, at any time, own any of the money deposited.

The plaintiff cannot recover on the theory of the fraudulent transfer of the bank-
rupt's money through the medium of withdrawal of the money after it was
deposited to the credit of the third person in defendant bank, for the bank was
not a transferee but merely a debtor of the depositor. The transfer, if any,
was made to the third person in whose name the deposit was made.

PROSKAUER and MERRELL, JJ., dissent, with opinion.

APPEAL by the defendant, Lebanon National Bank, from an
interlocutory judgment of the Supreme Court in favor of the
plaintiff, entered in the office of the clerk of the county of Bronx
on the 27th day of March, 1926, upon the decision of the court ren-
dered after a trial at the Bronx Special Term in an action for an
accounting.

First Department, March, 1927.                    [Vol. 219

*John E. Joyce* of counsel [*George A. Ferris* with him on the brief; *Jeremiah F. Connor*, attorney], for the appellant.

*Tracy S. Voorhees* of counsel [*Edward I. Devlin, Jr.*, with him on the brief; *Ewing & Voorhees*, attorneys], for the respondent.

McAvoy, J.  An interlocutory judgment was rendered in this action in favor of plaintiff, directing an accounting by the defendant bank of certain moneys which were deposited with it to the credit of a corporation known as Peabody & Adams.

The suit is brought by a trustee in bankruptcy of an insolvent concern which was during the events hereinafter described trading as Scott Norris & Company.  The latter ran a business under that name and one Carlisle Rowntree was its manager.  He was the active person in the business and had a power of attorney given by the bankrupt which authorized him to draw and indorse checks for the legitimate purposes of the business and not otherwise. The complaint sets out that Rowntree operated this concern for his own profit as a bucket shop; that in October, 1923, Rowntree, for the purpose of converting to his own use moneys of Scott Norris & Company, in fraud of said Norris and his creditors, indorsed checks drawn by customers of Scott Norris & Company and deposited them in the defendant bank to the account of Peabody & Adams.  When Rowntree made these deposits he furnished the defendant bank with a certified copy of a resolution of the board of directors of Peabody & Adams giving him and his two brothers authority to draw checks upon the funds of Peabody & Adams.  He thus was enabled to use these funds for his own purpose.  He originally deposited $25,000 in checks and thereafter other deposits, consisting of checks of customers drawn to Scott Norris & Company, were made to the credit of this account under the name of Peabody & Adams.  Thereafter Rowntree withdrew moneys for his own use from this account in fraud of the customers of Scott Norris & Company, the bankrupt, and the defendant is sought to be held liable on the basis of knowledge or means of knowledge of the alleged conversion and transfer of these funds by Rowntree in fraud of creditors of Norris, the bankrupt, since it accepted the account and paid out moneys from it on the order of Rowntree, from whose conduct of the account and from whose deposits therein the defendant, it is asserted, should have discovered the fraud of Rowntree in his fiduciary relationship with Scott Norris & Company.  These fraudulent practices and the loss consequent thereon are asserted to be chargeable to the bank because of its duty of inquiry and discovery of the fraud of Rowntree.

Rowntree originally opened this account on the recommendation

of another depositor, who had asked the receiving teller to solicit the account. Thereafter a teller called and saw Rowntree's brothers, who stated that they would open an account for a southern firm known as Peabody & Adams. They gave checks drawn to Scott Norris & Company to the teller which had a rubber stamp indorsement. The teller would not accept this deposit, which amounted to $25,000, but took it to the bank to show it to the president. The president of the bank would not accept the deposit. He telephoned to Rowntree, who came to the bank and had Rowntree sign a signature card of Scott Norris & Company. Rowntree also indorsed the checks with the name of Scott Norris & Company in pen and ink. The president also asked for a power of attorney showing Rowntree's authority to indorse the checks of Scott Norris & Company, and besides required evidence of authorization for drawing against the account of Peabody & Adams. He also held up drawings for several days until the checks could be collected. The president of the defendant bank then sent a messenger with the signature card of Scott Norris & Company signed by Rowntree, to the Continental Bank where an account was kept in the name of Scott Norris & Company, with Rowntree also acting as agent, that bank having on file powers of attorney given by Norris authorizing Rowntree, without limitation, to make, sign and indorse checks for Scott Norris & Company. Norris' signature was not on file in the other bank and the funds of Scott Norris & Company in that bank were withdrawable only on the signature of Rowntree or his brothers. After the signature card in the Continental Bank was verified as similar to the one given to the defendant bank, and discovering that Rowntree and his brothers had powers of attorney on file in the Continental Bank, the defendant bank also required and was furnished with the power of attorney authorizing withdrawals from its bank. This power of attorney was executed by Norris on October 16, 1923, and authorized Rowntree "with unlimited power and without limitation" to deposit money and funds and to make, draw, sign, indorse checks and other negotiable instruments "for any and all purposes." It was also furnished with a certified copy of the resolution of the board of directors of Peabody & Adams authorizing withdrawal of the funds of that company by L. U. Rowntree, vice-president, M. J. Rowntree, secretary and treasurer, and Carlisle Rowntree as duly authorized agent. There was no intimation at the time of the receipt of these deposits that Scott Norris & Company were conducting any irregular business, and no complaint or inquiry had been received by it concerning the business of Scott Norris & Company.

After the president of the Lebanon National Bank read in a newspaper that Scott Norris & Company was restrained by the Attorney-General from doing business it permitted no withdrawals from the account of Peabody & Adams and all moneys then on deposit were turned over to the plaintiff as receiver or as trustee when a petition in bankruptcy was filed against Norris individually and trading under the name of Scott Norris & Company.

There was no proof that Norris, the bankrupt, owned any of the assets or property of Scott Norris & Company. He was not a witness on this trial. Plaintiff showed that Carlisle Rowntree was the head of the office and gave all instructions as to managing the business. In reality the Norris Company was merely a vehicle or conduit for Rowntree through which Rowntree operated.

There was nothing in the proof which showed that Rowntree exceeded his authority as agent in depositing these checks drawn to Scott Norris & Company, in the account of Peabody & Adams. The supposed principal, Norris, did not testify and not one letter or any other document indicated that Rowntree's acts were unauthorized.

The theory of plaintiff is that Norris, the bankrupt, was the owner of the business known as Scott Norris & Company; that he was thus liable for its debts; that Rowntree was his agent and acted without authority under such circumstances as ought to have put this defendant bank on inquiry as to where he was receiving the funds; for what purpose he was depositing them and to whom they were being disbursed. Upon this state of facts it is argued that the principle of law governed which subjects a third person to liability when it deals with an agent acting outside of his authority under such circumstances as are sufficient to put him on notice that the agent is exceeding his power in dealing with the property, moneys or funds of his principal. The trustee sues in behalf of Norris for the benefit of his creditors and if Norris himself had no cause of action, the plaintiff can have none. It was necessary to establish liability against · the bank to show that Rowntree was Norris' agent in order to show that he violated his agency. As indicated, Norris did not make any proof with respect to Rowntree's status in the business. The only proof of agency is contained in the powers of attorney which powers were executed under Rowntree's plan to cover up his actual ownership. The evidence, if it indicates anything outside of the powers of attorney, shows that Norris was the dummy and Rowntree was the proprietor of the business of Scott Norris & Company. Norris not only did not own the money as principal in this bank, but he had no signature card on file in the only place where that firm had an

account. The money was not, therefore, withdrawable by Norris, the supposed owner of the business whose alleged agent is charged with the fraud against his principal. All the proof shows that Rowntree was the owner of the business and liable for its debts. All the legal rights which grew out of the conduct of the business belonged to him. He merely hid his identity with the name of the business. The very nature of the style of the business which he ran precluded his being an agent because he was in reality the principal, and the fact that he pretended to act as agent could not create that status when it did not actually exist. The bank, therefore, was dealing with the principal. Although he pretended to be an agent, the proof shows that the moneys did not belong to Norris and he could maintain no action against Rowntree because Rowntree was not his agent, and, therefore, neither could the plaintiff. No inquiry would have shown the bank anything other than that Rowntree had complete authority if he was an agent under the power of attorney to indorse and draw all the checks which this bank honored, or if they had inquired of Norris, it would have been discovered that Rowntree was the real principal.

Nothing in the proof brings the bank under the rule which requires a depository to pay the loss incurred through permitting an agent to exceed the authority conferred by his principal in withdrawal of funds. Nor can plaintiff recover on the theory of a fraudulent transfer of the bankrupt's funds through the medium of withdrawal of these funds after they were deposited to the credit of Peabody & Adams. The bank was not a transferee. It was merely a depository. The deposits merely created a debtor and creditor relationship with the bank and Peabody & Adams. The transfer ran to Peabody & Adams and if a cause lies at all for conversion of the funds fraudulently against the rights of creditors, it lies against Peabody & Adams, who were the transferees. The bank discharged its obligation with respect to these funds when it paid to Peabody & Adams on check drawn by a person authorized to make such withdrawals.

No liability of the bank is made out in law or fact, and the judgment should be reversed, with costs, and the complaint dismissed, with costs.

DOWLING, P. J., and FINCH, J., concur; MERRELL and PROSKAUER, JJ., dissent.

PROSKAUER, J. (dissenting). I agree with the majority of the court in holding that no cause of action was established on grounds other than that the transaction complained of was a transfer with intent to hinder, delay and defraud creditors. I dissent from the

view that this cause of action was not proved. Assuming that the proof justifies the conclusion reached by the majority of the court that Rowntree was the real owner of the business conducted under the name of Scott Norris & Company, it remains true that as to creditors of that business the legal title to the assets of the business was in Norris. The business was conducted in his name and with his consent. The certificate filed in the county clerk's office named him as the sole owner of the business. While as between him and Rowntree he may have been a dummy, none the less payments received from customers by checks to the order of Scott Norris & Company were payments to him and the legal title to these payments vested in him.

The transfers, effected by depositing a large number of small customers' checks in the defendant to the credit of Peabody & Adams, were made with intent to hinder, delay and defraud creditors. The business was insolvent; it was meeting demands of the creditors with the trick of sending them unsigned checks and upon their remonstrance they were put off with the excuse that the records were destroyed. The transferee, Peabody & Adams, was evidently a dummy corporation formed by Rowntree and his family and intended as a mere channel through which Rowntree could appropriate these moneys. It is unquestionable that Rowntree, acting with Norris' authority as manager of the business, intended to place these moneys beyond the reach of creditors.

The bank which received these checks and collected them was a transferee which must respond. By the provisions of the Bankruptcy Act, any transfer with intent to hinder, delay or defraud creditors made within four months before bankruptcy is void, unless the transferee shall prove his own good faith and his giving of a present fair consideration therefor. (4 Remington Bankruptcy [3d ed.], § 1931.) The transferee may be answerable even though he did not participate in the intent to hinder, delay or defraud, unless he acted in good faith and gave a present fair consideration. This defendant is liable, therefore, unless its conduct in crediting these moneys to Peabody & Adams and thereafter paying out to Peabody & Adams constituted present consideration given in good faith. There are circumstances which negative the defendant's claim of good faith. The deposits were opened with a number of small checks drawn by customers to the order of Scott Norris & Company, indorsed by the apparent manager of Scott Norris & Company, without being passed through the bank account of Scott Norris & Company. This should have given and did give the defendant pause. It is certainly most unusual for any honest business enterprise to permit its manager

thus to transfer directly checks received from customers. I do not here invoke the doctrine that the bank was chargeable by reason of any excess of authority on the part of the manager. I assume that the manager had complete authority from Norris to make the diversion. It is the fact of diversion in such highly unusual form that should have aroused suspicion. To this must be added the circumstance that the bank was fully aware that Peabody & Adams was a corporation controlled by Rowntree and his brothers. Thus not only was the form of the deposits to the credit of Peabody & Adams unusual, but there was disclosed to the defendant that Rowntree and his intimates were the beneficiaries of this form of transfer. As the president of the bank testified, he knew that Scott Norris & Company were making payment of a large amount to Peabody & Adams, that Rowntree was effectuating the payments and that they were going " to himself or a corporation which he organized or on which he could draw," and he admits that these circumstances excited his suspicion about this account. Yet he made no inquiry as to why Scott Norris & Company were diverting these moneys in this unusual manner. He knew that Scott Norris & Company was engaged in active business and had creditors and customers and that these moneys which he was receiving for the credit of Peabody & Adams were coming in from customers. He was told by his representat ve, whom he sent to inquire, that the cashier of the Continental Bank, where Scott Norris & Company had an account, thought that they were bucketing and that Rowntree was the manager. He knew, therefore, that he was dealing with people devoid of business integrity. The defendant cannot under these circumstances assert that it acted in good faith in abetting this scheme to defraud the creditors. It was put upon notice that the operators of this bucket shop were stripping it bare of assets. While inquiry might have disclosed that Rowntree was the real owner of the business, it would also have disclosed, if properly pressed, that there were unsatisfied creditors demanding payment and that the ordinary trade information services were issuing warnings against dealing with the transferror.

Nor can the defendant escape upon the theory that it was a mere conduit. It indorsed these checks and thus facilitated their collection, and with the knowledge and notice above described paid the moneys over to Rowntree and his brothers posing as Peabody & Adams. In the cases relied on by defendant the fraudulent grantee relieved himself of liability under circumstances that fell short of making him a party to a conspiracy to defraud by returning the money to the grantor. (*Armstrong* v. *Amer.*

*Exchange Nat. Bank,* 133 U. S. 433, 466; 2 Moore Fraudulent Conveyances, 681; *Cramer* v. *Blood,* 57 Barb. 155, 671; affd., 48 N. Y. 684; *Greason* v. *Holcomb,* 131 App. Div. 868; affd., 196 N. Y. 571.)

This case is distinguished from *Wilds* v. *Williston* (128 Misc. 654), relied on by the appellant, on these grounds among others: Williston & Company did not know that they were receiving moneys beneficially owned by Scott Norris & Company, but believed that they were dealing with Rowntree; they did not receive the payments in any unusual form calculated to arouse suspicion; the indebtedness there was honestly incurred before notice; there was never any notice that indicated any intent to transfer the money beyond the reach of creditors; there was merely the payment of money for ordinary trading on margin accounts; and finally, immediately upon the first notice of business misconduct on the part of Rowntree, Williston & Company closed the account, and still in ignorance of the relations between Rowntree and Norris paid the money back to Rowntree, from whom they had received it and to whom they were legally obligated to pay it.

For these reasons I believe the judgment should be affirmed, with costs.

Merrell, J., concurs.

Judgment reversed, with costs, and the complaint dismissed, with costs. Settle order on notice.