Bernard S. Meter, J.
In this action the plaintiffs, judgment creditors of John J. Roreck, seek to void the transfer by him to Valerie Roreck, his wife, of (1) his interest in a parcel of land in Bethpage by deed dated January 22,1962 and correction deed dated June 29, 1967, and (2) a mortgage on property in Suffolk County by assignment dated January 29, 1962. On September *944 10, 1956, the plaintiffs commenced an action against Mr. Roreck which on June 30, 1967 resulted in a judgment in favor of the plaintiffs for $370,826.12 (Record on Appeal 30 A D 2d 668, pp. 1, 30-32). After modification by the Court of Appeals (27 N Y 2d 687) the judgment was reduced to $148,895.92. Defendant John Roreck had acquired both assets prior to that litigation.
The defendants George Auslander, Valley National Bank of Long Island, and Public Service Heat & Power Co. Inc., are not alleged to have had anything to do with the transfers from John to Valerie Roreck. Each it is claimed hindered plaintiffs’ collection of its judgment by subsequent transactions involving the assets in question. Each of the three named defendants moves for summary judgment and the plaintiffs cross-move for summary judgment or partial summary judgment against the Rorecks, Auslander, the bank, and Public Service. The motions by Auslander and Public Service are granted and as to them the complaint is dismissed. The motions by the bank and plaintiffs’ cross motion are denied.
A threshold issue is raised by defendants Roreck concerning the capacity of plaintiffs to maintain the action. The corporate plaintiff and the three named individuals who, according to the caption, sue ‘ ‘ as The Creditors Committee ’ ’ were the plaintiffs in the earlier suit and hold the judgment which resulted from it. While the authority of the individuals to act as ‘ ‘ The Creditors Committee ’ ’ is not pleaded, under those circumstances it need not be. It is undisputed that on December 15, 1959, the corporate plaintiff was dissolved by proclamation for failure to pay taxes, but that dissolution did not affect either its right to collect and distribute its assets or to sue in its corporate name (Tax Law, § 203-a, subd. 10; Business Corporation Law, §§ 1006,1009; General Corporation Law, § 29). The plaintiffs have capacity to maintain the action.
Turning now to the merits, the court will first consider the plaintiffs’ cross motion. Plaintiffs place their primary reliance upon section 273-a of the Debtor and Creditor Law which provides : ‘ ‘ Every conveyance made without fair consideration when the person making it is a defendant in an action for money damages * * * is fraudulent as to the plaintiff in that action without regard to the actual intent of the defendant if, after final judgment for the plaintiff, the defendant fails to satisfy the judgment.” The section was added to article 10 of the Debtor and Creditor Law by section 103 of chapter 310 of the Laws of 1962, effective September 1, 1963, and the Rorecks argue that it has no application to the transfers involved in the *945 first and second canses of action, of the Bethpage land and the Suffolk mortgage, both of which occurred in January, 1962. The court agrees.
Article 10 of the Debtor and Creditor Law as adopted in 1925 was identical with the Uniform Fraudulent Conveyance Act. Consistent with the general rule that statutes are to be construed as prospective in operation unless a contrary legislative intent is clearly expressed (People ex rel. Richardson v. Deegan, 34 A D 2d 835; McKinney’s Cons. Laws of N. Y., Book 1, Statutes, §51), its provisions have not been given retroactive effect (American Sur. Co. v. Conner, 251 N. Y. 1, 11; American Agrie. Chem. Co. v. Jankowski, 19 F. Supp. 509; National Sur. Co. v. Wittich, 184 Minn. 44; Smith v. Edwards, 81 Utah 244; see 37 C. J. S., Fraudulent Conveyances, § 5, p. 854). Plaintiffs argue that the section is simply declaratory of the common law, but that contention is refuted by both prior case law and the legislative intent as stated by the Advisory Committee on Practice and Procedure, upon whose recommendation the section was added to article 10.
The case law prior to adoption of section 273-a was that the fact that litigation was threatened or pending was a factor to be considered in determining whether a transfer was made with intent to defraud, but that absent a finding of such a purpose the conveyance could not be set aside (Langford v. Fessenden, 220 App. Div. 258, affd. 246 N. Y. 611; Herter v. Krzewinski, 233 App. Div. 240; Newfield v. Ettlinger, 22 Misc 2d 769, app. dsmd. 10 A D 2d 947; see 24 N. Y. Jur., Fraudulent Conveyances, § 17, p. 413). The Advisory Committee on Practice and Procedure in considering the CPLR provisions relating to enforcement of judgments ‘ ‘ recommended that a new section be added to the Debtor and Creditor Law ” reading exactly as section 273-a now reads, and stated the basis for its recommendations as follows (Third Preliminary Report [N. Y. Legis. Doc., 1959, No. 17], p. 288):
‘ ‘ In addition to provisional remedies which may be available, the advisory committee recommends that creditors have a further remedy to discourage a defendant from fraudulently disposing of assets in contemplation of an adverse judgment while an action is still pending. Ip order to overturn such transfers under the Fraudulent Conveyance Act, the creditor is presently required to show actual intent to defraud; or that the debtor was rendered insolvent by the transfer; or that after any particular conveyance by a debtor in business he was left with an ‘ -unreasonably small capital ’; or that the debtor intended or believed that he would incur debts ‘ beyond his ability to pay as *946 they mature ’ at the time of conveyance. N. Y. Debt. & Cred. Law §§ 273, 274, 275, 276. These facts are frequently difficult to prove.
‘ ‘ Even if the gift was made without intent to defraud and if the judgment debtor was not rendered insolvent thereby and is not insolvent after judgment but simply chooses not to satisfy it, there is nevertheless no reason for requiring the judgment creditor to pursue him rather than a gratuitous recipient of the debtor’s assets.” Since section 273-a requires no proof of either insolvency or intent, it constitutes a deviation from, rather than a declaration of, pre-existing law and cannot be given retroactive construction.
That section 273-a does not apply is not dispositive, however, for section 273, which was part of the article as originally enacted, makes ‘ ‘ Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent # * * fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration.” The January, 1962 conveyances can be set aside under that provision if John Eoreck was rendered insolvent thereby and the conveyances were without fair consideration. Mr. Eoreck’s affidavit admits that in 1960 he was “ in serious financial crisis ”. If it be assumed that that admission establishes insolvency in January, 1962, plaintiffs are nevertheless not entitled to summary judgment. ‘ ‘ What is fair consideration must, of course, be determined upon the facts and circumstances of each particular case,” (Halsey v. Winant, 258 N. Y. 512, 523, cert. den. 287 U. S. 620). While the promise of future support is not fair consideration (Matter of Oppenheim, 269 App. Div. 1040; Borenstein v. Borenstein, 171 Misc. 697, revd. on other grounds 258 App. Div. 786), the Rorecks’ affidavits assert that moneys were advanced by Valerie Roreck prior to the conveyances. Antecedent debt is fair consideration within the meaning of section 272 of the Debtor and Creditor Law (Langford v. Fessenden, 220 App. Div. 258, affd. 246 N. Y. 611) though the debt arises out of the husband obligation of support (Safie v. Safie, 24 A D 2d 502, affd. 17 N Y 2d 601). There are, therefore, triable issues of fact (Hutchinson v. Emerson, 47 Misc 2d 419, affd. 26 A D 2d 580; Employers Mut. Liab. Ins. Co. v. Perrino, 37 Misc 2d 94), both as to the property transfers attacked in the first and second causes of action and, a fortiori, as to the subsequent transactions with those properties or the proceeds of them referred to in the third and fourth causes of action. As against the Eorecks, plaintiffs’ cross motion, therefore, fails.' '
*947 The cross motions as to the other three defendants must likewise be denied, for each of the defendants categorically denies knowledge on the part of these defendants to raise triable issues if in fact there was such intent, and with respect to Public Service and the bank there are also triable issues concerning whether the knowledge which plaintiffs contend Auslander had can be knowledge of any fraudulent intent on the part of the Borecks, imputed to them.
Defendants’ motions for summary judgment raise questions other than knowledge, but it is important to note for purpose of these motions that plaintiffs’ papers sufficiently establish and that, therefore, in the ensuing discussion, guilty knowledge on their parts is assumed. Against defendant Auslander, indeed, the sole basis of the claim is knowledge, for there is no allegation in the complaint or indication in the affidavit that he received any part of the proceeds of the Public Service loan or the repayment of it or of the foreclosure of the Suffolk mortgage. Sections 276-a, 278 and 279 of the Debtor and Creditor Law recognize an action to set aside a conveyance or annul an obligation, and it is settled that in such an action a money judgment may be awarded against a grantee with notice who has disposed of the property and has only its proceeds (American Sugar Refining Co. v. Fancher, 145 N. Y. 552; see Hamilton Nat. Bank v. Halstead, 134 N. Y. 520). There is, however, no right apart from statute to sue for money damages (Goldberg v. Korman, 257 App. Div. 990 ; Kimmelsman v. Bishop, 251 App. Div. 724; Kane v. Sesac, 54 P. Supp. 853, 861-862).* Plaintiffs are *948 not aided, therefore, by the rule that a corporate officer who performs an act which constitutes a tort is individually liable notwithstanding that the corporation is also liable and that he has derived no personal gain (Hinkle Iron Co. v. Kohn, 229 N. Y. 179; Mendelson v. Boettger, 257 App. Div. 167, affd. 281 N. Y. 747). As against defendant Auslander, the complaint is dismissed.
The sole basis pleaded for plaintiffs’ claim against Public Service is that the Borecks executed and delivered to Public Service a mortgage on the Bethpage property. The moving papers allege, however, that that mortgage has been satisfied and that allegation has not been refuted by plaintiffs. Were Public Service the direct grantee of the judgment debtor, John Boreck, surrender of the property to him would exonerate it from liability (Greason v. Holcomb, 131 App. Div. 868, affd. 196 N. Y. 571; Cramer v. Blood, 57 Barb. 155 and 671, affd. 48 N. Y. 684; Wilds v. Williston, 128 Misc. 654). The fact that Public Service is the grantee of the debtor’s grantee and has, by its satisfaction of the mortgage, “surrendered” the property to its immediate grantor rather than to the judgment debtor, should not change that principle, which is founded on the concept that the surrender leaves the judgment creditor in the same position to subject the property to the lien of his judgment as he was before the claimed fraudulent transfer. The complaint is, therefore, dismissed as to Public Service, as well.
With respect to the bank, the claim is broader, the fourth cause of action alleging the assignment of the mortgage on the Suffolk property to Valerie Boreck, her foreclosure of the mortgage, and the payment of the proceeds of the foreclosure to Valerie Boreck and the bank jointly. The bank’s moving papers establish by documentary evidence, unrefuted despite the lapse of two months between the making of its motion and the return day, that in November, 1966 the bank loaned to John and Valerie Boreck $48,213.60 and took from Valerie Boreck as security therefor an assignment of the Suffolk mortgage, that the $48,213.60 was paid out in cashier’s check of $43,468.25 to the County Treasurer of Suffolk County for back taxes on the mortgaged property, $4,270.35 for taxes due the Village of Brightwaters on the mortgaged property and $475 in expenses for closing the loan, that the proceeds of the foreclosure amounted to $118,842.22 which was deposited in a regular checking account in the bank of Valerie Boreck’s name and was disbursed as follows: $48,551.11 to the bank constituting repayment of its loan plus $337.51 interest, $15,292.50 to Public Service in payment for its loan, $3,500 to one Horn in payment of legal *949 fees for the foreclosure proceeding, $5,000 to John Roreck and the balance to Valerie Roreck. The law is clear that a grantee who is privy to the fraud is not entitled to credit for payments to himself unconnected with the upkeep or preservation of the property transferred, but is, despite his knowledge, entitled to credit for payments essential to the preservation of the property, payments to himself for loans made by him for the purpose of preservation, payments made to creditors of the judgment debtor, who does not lose his right to pay one creditor in preference to another provided only the creditor paid is not party to the fraudulent conveyance scheme (Grosch v. Kessler, 256 N. Y. 477; Frank v. Von Bayer, 236 N. Y. 473; Smith v. Wise, 132 N. Y. 172; Davis v. Leopold, 87 N. Y. 620), and, as noted above in connection with Public Service’s motion, payments returning the property in question or its proceeds to his immediate grantee or to the judgment debtor. The bank will, therefore, it appears, be entitled to credit, notwithstanding guilty knowledge if proved, for all of the moneys received and disbursed by it, except the $337.51 interest paid to it. While that sum is small in relation to the over-all claim, the principle de minimis non curat lex does not apply to a positive and wrongful invasion of another’s property (Seneca Road Co. v. Auburn & Rochester R. R. Co., 5 Hill 170, 175). If plaintiffs can prove guilty knowledge on the part of the bank they will be entitled to recover part of what they claim. The bank’s motion for summary judgment must, therefore, be denied.

 Garlasco v. Smith (250 App. Div. 534, affd. 276 N. Y. 666) was such an action but is not authority for the Auslander cause of action, for the Reporter’s memorandum (p. 667) shows that the individual held in that case had received the funds for which judgment was awarded against him. Martin v. Martin (29 A D 2d 864, mod. 23 N Y 2d 858) concerned a defendant who violated a court order not to transfer securities fraudulently conveyed to her by the judgment debtor and, if contrary, is clearly distinguishable. James v. Powell (25 A D 2d 1) is to the contrary and is not distinguishable. However, on appeal to the Court of Appeals the matter was remitted to the Supreme Court for reconsideration of the sufficiency of the complaint (19 N Y 2d 249, 259). Moreover, in arriving at its conclusion that there existed a cause of action for tortious interference with the collectibility of a judgment, the Appellate Division, First Department, refused to follow the Goldberg and Kimmelsman cases, which are Second Department decisions binding upon this court. Finally, there was a strong dissent in the Appellate Division. Though the dissent recognized a right of action for interference with assets against which the judgment has become a lien, that theory does not help plaintiffs, for their judgment is dated June 30, 1967 and the last disbursement out of Valerie Roreck’s account with the bank was on June 27, 1967. For all of those reasons, the court does not follow the James decision.