**BOS LINES, INC., Transferee, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**BOS LINES, INC., Transferee of the Transferee, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**Nos. 18093, 18094.**

United States Court of Appeals
Eighth Circuit.

Dec. 30, 1965.

Arley J. Wilson, of Mote, Wilson & Welp, Marshalltown, Iowa, made argument for petitioner and filed brief with Allen E. Brennecke, of Mote, Wilson & Welp, Marshalltown, Iowa.

Harry Marselli, Atty., Tax Division, Dept. of Justice, Washington, D. C., made argument for respondent. Richard M. Roberts, Acting Asst. Atty. Gen., Meyer Rothwacks, Crombie J. D. Garrett and William A. Friedlander, Attys., Tax Division, Dept. of Justice, Washington, D. C., filed brief.

Before VAN OOSTERHOUT, MAT-THES and MEHAFFY, Circuit Judges.

MATTHES, Circuit Judge.

These consolidated petitions for review of the decision of the Tax Court involve a deficiency in corporate income tax for the calendar year 1952 in the amount of $32,427.98, due from Bos Truck Lines, Inc. The Tax Court's memorandum opinion (T. C. Memo 1965–71) is not officially reported. There is substantial agreement as to the pertinent facts, some of which have been stipulated.

Bos Truck Lines, Inc., hereinafter referred to as "Truck", was organized under the laws of the State of Nebraska in 1937 and continued in existence until its dissolution and liquidation on or about April 26, 1957. Its capital stock was owned by Joe Bos and his wife, Lydia M. Bos.

Bos Freight Lines, Inc., hereinafter referred to as "Freight", was incorporated under the laws of the State of Missouri in 1937 and continued in existence until it was dissolved and liquidated on or about July 14, 1957. Its capital stock was owned by A. H. Bos (a brother of Joe) and his wife, Isabelle C. Bos.

Bos Lines, Inc., hereinafter referred to as "petitioner" or "Lines", was incorporated under the laws of the State of Iowa on July 5, 1957.

Truck and Freight were engaged in business as common carriers of property by motor vehicle, and both corporations had their principal place of business in Marshalltown, Iowa.

On or about March 1, 1957, Freight purchased all of the capital stock of Truck from Joe and Lydia Bos. Truck was liquidated and all of its assets were transferred to Freight. The total price paid by Freight to Joe and Lydia Bos was $456,350, payable $106,350 down and the balance of $350,000 to be paid over a period of six years and eleven months.

On or about July 14, 1957, petitioner acquired all of the assets of Freight, including all of the assets Freight had acquired from Truck, and assumed

Freight's liabilities, in complete cancellation of all of the capital stock of Freight. The latter was thereupon dissolved.

Lines filed a corporate income tax return for 1957, for income, in that year, from operations of Freight and Lines. The return showed the corporation name as "Bos Lines, Inc. (Bos Freight Lines, Inc.)" and contained the following statement:

"On July 5, 1957 the Bos Freight Lines, Inc. (a Missouri Corporation) was reincorporated under the laws of Iowa. This was a reorganization under Section 368(a) (1) (F) of the Revenue Code and the new entity has exactly the same stockholders having the same interests as before.

*   *   *   *   *   *

"On February 25, 1957 the Company acquired all of the capital stock of the Bos Truck Lines, Inc., an Iowa Corporation, for an amount of $496,-350.00.

"Upon this acquisition the Board of Directors immediately adopted a plan of liquidation whereby the net assets of the Bos Truck Lines, Inc. were taken over by the *acquiring corporation, Bos Lines, Inc.*" (Italics supplied).

In 1944, the United States Government took over the operation of Truck and retained control during 1944 and a part of 1945. In 1952, Truck received an award of $74,890.05 from the Motor Carrier Claims Commission for the use of its facilities during 1944 and 1945. The Government also took over control of Freight during the same years and later an award was paid to Freight. However, the payment to Freight has only collateral relevance to the issues before us.

Later, the Commissioner determined that the award from the Motor Carrier Claims Commission, less certain expenses, constituted taxable income to Truck in 1952, and on December 12, 1955, the Commissioner determined a deficiency of $37,713.26 in the income tax of Truck for 1952. In proceedings to review, on November 14, 1960, pursuant to a stipulation signed that same day by Joseph A. Maun, a lawyer, who held a power of attorney from Truck, a decision was entered by the Tax Court, finding that there was a deficiency of $32,427.98, due from Truck for 1952. That decision became final. In another proceeding in the Tax Court involving an alleged deficiency against Freight for 1952, pursuant to a stipulation signed by Mr. Maun, who also represented Freight, a decision was entered on October 7, 1960, finding no deficiency due.

The foregoing factual context gave rise to the proceedings which culminated in the decision under review.

October 2, 1962, the Commissioner mailed to petitioner a notice of its liability, as transferee of the assets of Truck, for the deficiency determined against that corporation. That notice and subsequent proceedings are the subject of review in our case No. 18,093. On July 15, 1963, a second notice was mailed by the Commissioner to petitioner, as transferee of a transferee, asserting liability based on receipt of the same assets. This notice is the subject of our case No. 18,094. The Tax Court, after finding that the determination of transferee liability was valid under the first notice, also found, alternatively, that the determination was valid under the second notice, and entered the decision under review. Concededly, there is only a single liability.

Before resolving the notice issue, we turn to the pertinent statutory provisions.

Section 311 of the Internal Revenue Code of 1939 provides:

(a) *Method of collection.* The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, collected, and paid in the same manner and subject to the same provisions and limitations as in the case of a deficiency in a tax imposed by this chapter * * *:

"(1) *Transferees.* The liability, at law or in equity, of a transferee of property of a taxpayer, in respect

of the tax (including interest, additional amounts, and additions to the tax provided by law) imposed upon the taxpayer by this chapter.

\* \* \* \* \* \*

"(b) *Period of limitation.* The period of limitation for assessment of any such liability of a transferee or fiduciary shall be as follows:

"(1) In the case of the liability of an initial transferee of the property of the taxpayer,—within one year after the expiration of the period of limitation for assessment against the taxpayer;

"(2) In the case of the liability of a transferee of a transferee of the property of the taxpayer,—within one year after the expiration of the period of limitation for assessment against the preceding transferee, but only if within three years after the expiration of the period of limitation for assessment against the taxpayer;—[1]

\* \* \* \* \* \*

"(d) *Suspension of running of statute of limitations.* The running of the statute of limitations upon the assessment of the liability of a transferee or fiduciary shall, after the mailing to the transferee or fiduciary of the notice provided for in section 272(a), be suspended for the period during which the Commissioner is prohibited from making the assessment in respect of the liability of the transferee or fiduciary (and in any event, if a proceeding in respect of the liability is placed on the docket of the Tax Court, until the decision of the Tax Court becomes final), and for sixty days thereafter."

■ Petitioner attacks the notice dated October 2, 1962, contending that it is fatally defective because it was directed to the wrong party. The notice

was addressed to "Bos Lines, Inc., Transferee". It recites that the determination of the tax liability of Bos Truck Lines for 1952 disclosed a deficiency of $32,427.98, as shown in a statement attached, and that the amount of the deficiency "constituting your liability as transferee of assets of said Bos Truck Lines, Inc., will be assessed against you". Petitioner does not deny that it received Truck's assets. It maintains, however, that, because the assets passed through Freight's hands, it is the "transferee of the transferee" of Truck and that the failure of the notice to so designate its status rendered the notice legally ineffective. We do not agree.

■ Manifestly, the party charged with tax liability in a transferee proceeding is entitled to a notice of the Commissioner's determination, so that he may be afforded an opportunity to seek review and obtain resolution of the issue by the Tax Court. See, Phillips v. C. I. R., 283 U.S. 589, 51 S.Ct. 608, 75 L.Ed. 1289 (1931); Ochs v. United States, 305 F.2d 844, 158 Ct.Cl. 115 (1962). In this case, the notice was addressed to, and received by, petitioner, the only party against whom the Commissioner was proceeding and the only party which could be adversely affected by the Commissioner's determination of transferee liability. The notice fully apprised petitioner of the nature of the liability assessed against it. Petitioner responded to the notice by timely instituting appropriate proceedings in the Tax Court. Under the circumstances, the failure of the notice to designate petitioner as "transferee of transferee" could not detract from its effectiveness. Certainly, the failure is not of sufficient substance to deprive the Tax Court of jursdiction over the proceeding. Cf., Burnet v. San Joaquin Fruit and Investment Co., 52 F.2d 123, 127–128 (9 Cir. 1931).

■■ Moreover, § 311 does not recognize any distinction between a "transferee" and a "transferee of a transferee", except with regard to the period of limi-

---

*. Section 311(b) pertaining to the period of limitation, provides for exceptions pertinent to this case, which shall be later discussed.

tation, which is found in § 311(b).[2] The statute, in all respects, is designed to afford a summary proceeding against *all transferees* of assets of a delinquent taxpayer. See, C. I. R. v. Stern, 357 U.S. 39, 78 S.Ct. 1047, 2 L.Ed.2d 1126 (1958). What is important in transferee proceedings is that notice be given to the party against whom the Commissioner is asserting transferee liability. If the ultimate recipient of the assets of a delinquent taxpayer, whether such recipient be the initial or a subsequent transferee, receives timely notice of the Commissioner's determination, we believe the notice requirements of the statute are satisfied.

Petitioner's reliance upon Signal Oil & Gas Co. v. United States, 125 F.2d 476 (9 Cir. 1942), and Missile Systems Corp. of Tex. (T.C.Memo 64–212) is misplaced. The factual distinctions in these cases render them inapposite.

No case squarely on point has come to our attention, but the tenor of numerous decisions we have examined makes it convincingly clear that the term "transferee", as used in the statute, encompasses a "transferee of a transferee". See, e. g., Signal Oil & Gas Co. v. United States, supra; 9 Mertens, Law of Federal Income Taxation, § 53.22, p. 33; Wiener v. C. I. R., 12 T.C. 701 (1949).

We accordingly hold that the notice dated October 2, 1962, satisfied the statutory requirements.

■ As a protective measure, the Commissioner, on *July 15, 1963,* sent to Lines an additional notice of its liability for Truck's tax deficiency and interest, this time as *transferee of a transferee* of assets of Truck. Thereafter, in answer to petitioner's timely petition, the Commissioner alleged that, without consents, he had until *April 15, 1963,* to assess the liability of petitioner, as transferee of the transferee. The Commissioner, after the actual trial had been completed but before judgment was entered, relying on Tax Court Rule 17(d), requested, and was granted, leave to amend his answer to show that the statute of limitations had not run until *July 18, 1963.*

On this appeal, petitioner alleges that, under Rule 17(d), the Commissioner should not have been allowed, after the actual trial had been completed, to amend his pleadings and that, since the amendment was not timely, the notice of deficiency was insufficient, as the original pleadings disclosed that notice was given after the statute of limitations had run. Petitioner has never claimed that the statutory notice period had *actually* expired, but merely that, as the pleadings stood, it had *apparently* expired. Furthermore, examination of the record convinces us that the assessment of liability was made within the permissible statutory period.

The trial court correctly allowed the amendment, which merely corrected a technical error. The Commissioner, in his original answer, had incorrectly computed the length of time that remained under the statute of limitations. The amendment simply altered the pleading to reflect the actual length of time remaining under that statute.

The Commissioner correctly asserts that Rule 17(d) has not been narrowly construed. In fact, non-prejudicial amendments, which do not raise new issues, have been permitted after the actual trial of a case has been completed. See C. I. R. v. Finley, 265 F.2d 885, 888 (10 Cir. 1959), and cases there cited.

In summary, petitioner's argument that it received insufficient notice of

2. Section 311(b) provides:
"The period of limitation for assessment of any such liability of a transferee or fiduciary shall be as follows:
"(1) In the case of the liability of an initial transferee of the property of the taxpayer,—within one year after the expiration of the period of limitation for assessment against the taxpayer;

"(2) In the case of the liability of a transferee of a transferee of the property of the taxpayer—within one year after the expiration of the period of limitation for assessment against the preceding transferee, but only if within three years after the expiration of the period of limitation for assessment against the taxpayer; * * *."

Truck's tax deficiency is wholly without merit. Either deficiency notice was entirely adequate to apprise petitioner of its liability as a transferee of the assets of Truck.

■ Petitioner also contends that Joseph A. Maun was unauthorized to represent Truck in the proceedings before the Tax Court and that the Tax Court erred in entering its decision finding the delinquency on the basis of Mr. Maun's stipulation.

September 24, 1954, Bos Truck Lines, Inc., through its president, Joe Bos, signed a power of attorney, which conferred upon Mr. Maun broad authority in connection with Truck's income tax liability for the calendar years 1951 and 1952. It was on the basis of this power of attorney that Mr. Maun executed the stipulation.

Petitioner's position is that the liquidation and dissolution of Truck in April, 1957, automatically terminated Maun's authority under the power of attorney. The Tax Court, upon consideration of the merits of this argument, held, on the basis of Nebraska law, that the dissolution of Truck did not terminate the power of attorney.[3]

Petitioner has not deviated from its trial position. It endeavors to convince us that all authority of Mr. Maun was, *ipso facto*, terminated upon the dissolution of Bos Truck Lines.

The Commissioner advances a two-pronged counter attack. One, that petitioner has failed to discharge its burden of showing that Truck was not liable for the tax, and; two, that the power of attorney was still valid at the time Mr. Maun stipulated to the decision which determined the deficiency.

■ The law on the first issue is well settled. Not only does § 1119 of the 1939 Code provide that the burden is on the transferee to show non-liability on the part of the taxpayer, but the courts have unequivocally held that the transferee must carry this burden. C. I. R. v. Southern Bell Tel. & Tel. Co., 102 F.2d 397, 401–402 (6 Cir. 1939); Paschal v. Blieden, 127 F.2d 398, 403–404 (8 Cir. 1942), where this court said: "A transferee, like any other taxpayer resisting payment of a tax, has the burden of showing that the taxes claimed are incorrect." See also, 9 Mertens, Law of Federal Income Taxation, § 53.46, which announces: "If no evidence as to the liability of the original taxpayer is offered by the transferee, the determination of the Commissioner in that respect will be sustained."

Petitioner does not take exception to the rule or to its applicability. Neither has petitioner, at any time, placed in issue the correctness of the Commissioner's determination of Truck's 1952 tax liability. There is not an iota of evidence tending to prove that Truck did not owe the tax. Rather, petitioner has rested its attack entirely upon the claimed lack of conclusiveness of the Tax Court's decision. Because of the failure of petitioner to meet and carry the burden imposed upon it, we are compelled to hold that it is not entitled to relief on the ground of the asserted lack of authority on the part of Mr. Maun.[4]

---

3. The Tax Court relied, in part at least, upon Chestnut v. Master Laboratories, 148 Neb. 378, 27 N.W.2d 541 (1947).

4. Our conclusion makes it unnecessary to delve, at length, into the efficacy of the power of attorney at the time Maun executed the stipulation. We have considered the applicable statute, § 21–186, 1A R.S.Neb.1943 (Reissue of 1954), which provides that dissolved corporations shall be continued as bodies corporate for a term of five years for certain purposes, one of which is the prosecution or defense of pending litigation. We have also examined the Nebraska decisional law. We have in mind that A. H. and Isabelle Bos, as managers of Truck, the dissolved corporation, had, at least, constructive knowledge of the Tax Court's proceedings and the Tax Court's decision based on the Maun stipulation and that they failed to petition for a review of that decision, although adequate time remained for that purpose. From all of this, we conclude that there is merit in the Commissioner's argument that the Tax Court's decision is invulnerable to the attack which petitioner

■ Petitioner further asserts that the decision under review cannot stand because the evidence demonstrates conclusively that the fair market value of the assets transferred, from Truck to Freight and from Freight to Lines, was less than the amount of the liabilities assumed in each transfer.

The agreement for the sale of Truck's capital stock, between Joe and Lydia Bos, as sellers, and Bos Freight Lines, as purchaser, contained this provision:

"It is further mutually agreed that all liabilities, determined or contingent, known or unknown of the Bos Truck Lines, Incorporated, and whether disclosed or not disclosed by the Corporate records, shall be and continue to be the obligation of the Bos Truck Lines, Incorporated, and no recourse thereon shall in any manner be had upon second parties [Joe and Lydia Bos] or either of them by virtue hereof."

When A. H. and Isabelle Bos, owners of Freight, incorporated the new corporation, Lines, the latter acquired all the assets of Freight and, as heretofore stated, assumed Freight's liabilities, in complete cancellation of Freight's stock.

The Tax Court found:

"In the agreement whereby Freight contracted to purchase all the stock of Truck from Joe Bos and Lydia Bos it was stipulated that all liabilities of Truck, known or unknown, would continue to be Truck's liabilities and without recourse upon the sellers. When Truck was dissolved, its assets were taken by Freight and its liabilities were assumed. Also, when Freight was dissolved its assets were taken by the petitioner which necessarily assumed the liabilities, known or unknown.

* * * One of the liabilities of Truck so assumed by Freight and later by the petitioner was the liability for additional income tax for 1952, then the subject of a proceed-

ing pending in this Court. As a general rule, a surviving corporation is liable at law for the debts and liabilities of its predecessor corporation where there is a merger or consolidation or where it is merely a continuation of the predecessor. West Texas Refining & D. Co. v. Commissioner, 68 F.2d 77 (C.A. 10, 1933). And where there is transferee liability at law, the respondent is not obliged to prove the value of the assets transferred. Kamen Soap Products Co. v. Commissioner, 230 F.2d 565 (C.A. 2, 1956); Turnbull, Inc., 42 T.C. 582 (1964)."

After due consideration, we agree with the Tax Court and hold that by reason of the contract, under which Freight became obligated for "all liabilities, determined or contingent, known or unknown", of Truck, which were also assumed by Lines, petitioner became liable to the United States, a real party in interest, intended to be benefited by the agreement. This is so because the assumption of Truck's liabilities subjected petitioner to transferee liability at law under the statute. See, Kamen Soap Products Co. v. C. I. R., 230 F.2d 565, 567 (2 Cir. 1956); American Equitable Assur. Co. v. Helvering, 68 F.2d 46 (2 Cir. 1933); Helvering v. Wheeling Mold & Foundry Co., 71 F.2d 749 (4 Cir. 1934), cert. denied, Wheeling Mold & Foundry Co. v. Helvering, 293 U.S. 603, 55 S.Ct. 119, 79 L.Ed. 695; Continental Baking Co. v. Helvering, 64 App.D.C. 112, 75 F.2d 243 (1934), cert. denied, 295 U.S. 756, 55 S.Ct. 914, 79 L.Ed. 1699; West Texas Refining & D. Co. v. C. I. R., 68 F.2d 77 (10 Cir. 1933); Shepard v. C. I. R., 101 F.2d 595 (7 Cir. 1939), cert. denied, 307 U.S. 639, 59 S.Ct. 1037, 83 L.Ed. 1520; Texsun Supply Corp. v. C. I. R., 17 T.C. 433 (1951). Cf. also, United States v. Scott, 167 F.2d 301 (8 Cir. 1948).

■ Alternatively, the Tax Court found that the Commissioner "has proved the transfer of assets of a value sufficient

now launches against it. But, for the reasons stated in the opinion, we find it

unnecessary to make a definitive ruling on this point.

to cover the deficiency and interest thereon."[5]

■ Petitioner urges that, although the stipulated fair market value of assets of Truck transferred to Freight was $730,419.09 and the value of trade payables assumed by Freight was $234,069.09, the $496,350 net value of the transferred assets should have been reduced by the amounts of two chattel mortgages, securing the down payment and balance due on the purchase by Freight of the stock of Truck. If the chattel mortgages, given to the Northwestern National Bank for $170,065 and given to Joe and Lydia Bos for $350,000, were liabilities which should have been subtracted from assets, there would remain no net fair market value upon which transferee liability in equity could attach. The theory underlying petitioner's contention is that it was at the insistence of Joe Bos, then owner of Truck, that the assets of Truck were subjected to the mortgages before their actual transfer to Freight, so that, at the time of the transfer, Truck's assets were already encumbered by the two mortgages.

With respect to this argument, the Tax Court said:

"The net value of the assets transferred from Truck to Freight was stipulated to be $496,350 * * *. The petitioner contends that the $350,000 obligation to Joe and Lydia Bos should be offset against this, but that obligation was not a liability of the transferor. It does not enter into the valuation of the assets transferred from Truck. It was a separate debt incurred by Freight."

We have carefully examined the record and find no support for petitioner's theory. Freight, as mortgagor, executed a chattel mortgage to the Northwestern National Bank which, on its face, included chattels of the *mortgagor* "and all of the chattels of the like or similar description hereafter acquired by the Mortgagor." The chattel mortgage to Joe and Lydia Bos reads: "That said *Mortgagor* [Freight] * * * does hereby * * * convey and confirm unto the said Mortgagee the following described personal property (which term shall include all additional and substituted personal property of *Mortgagor* of a similar nature * * *)". (Emphasis added).

The language in these mortgages clearly indicates that Truck's property only became encumbered when, upon the transfer to Freight, it fell within the after-acquired property clauses of the mortgages made by Freight. Therefore, the Tax Court was fully justified in finding, on the evidence, that the mortgages were not encumbrances of Truck's property, which would have reduced the value of Truck's assets upon their subsequent transfer to Freight.

The Tax Court further found that Freight transferred, to Lines, assets (aside from accounts receivable and franchises and intangibles) having a fair market value of $976,750.54 and that Lines assumed, as a result of the transfer, liabilities of $1,318,332.84. It was stipulated that the *book value* of the accounts receivable and of the franchises and intangibles Lines received from Freight was $242,220.47 and $150,167.07, respectively.

■ Petitioner asserts in this regard that the stipulated book value of the accounts receivable and the franchises and intangibles was not evidence of their fair market value. It further contends that the only evidence of fair market value is found in the testimony of petitioner's president, to the effect that the value of such assets was so much less than their book value that the fair market value of the total assets transferred did not exceed the liabilities assumed by Lines.

5. Generally, the rule is that, where there is transferee liability *in equity* as opposed to transferee liability *at law*, the Commissioner must prove that the transferee received assets of a value sufficient to cover the asserted tax deficiency. 9 Mertens, Law of Federal Income Taxation, § 53.45.

We cannot agree with petitioner. While the book value of corporate assets is not necessarily the equivalent of the fair market value of the assets, it certainly is evidence of fair market value. See, Watson v. C. I. R., 25 B.T.A. 971 (1932).

Petitioner's only evidence to negate this was the testimony of its president, Mr. Mattox, certainly an interested party. The weight to be given his testimony was for the trial court to determine. That court decided that petitioner's evidence was unpersuasive, and we cannot say it erred in this finding. Nor can we say that the Tax Court was incorrect in its determination that "[t]here is not sufficient evidence to show that the franchises or the accounts receivable were substantially below book value as petitioner alleges".

Petitioner also assigns as error the refusal of the Tax Court to admit into evidence the testimony of its expert witness, Mr. Johns, with respect to the fair market value of the accounts receivable on September 10, 1964.

We are of the view that the court correctly ruled that a proper foundation for the testimony had not been laid, especially in view of the fact that the value of the accounts receivable on September 10, *1964*, is not directly relevant to the fair market value at the time of the transfer, in *1957*.

We, therefore, find that (1) Lines, as a transferee at law, was liable for the tax deficiency, regardless of the value of the assets it received, and (2) the Tax Court's finding, that Lines received sufficient assets, in excess of liabilities, to have imposed upon it liability for the tax deficiency, is sufficiently supported by the evidence and is not clearly erroneous.

It is also contended by petitioner that the Tax Court erred in holding that the election, made by "Bos Lines, Inc." to be bound by § 99 of the Technical Amendments Act of 1958,[6] did not apply to Truck's 1952 deficiency.

The deadline for making an election under § 99 was September 2, 1959. Petitioner timely executed an election on behalf of Bos Freight Lines, but, concededly, no election was ever made on behalf of Truck. Nevertheless, petitioner argues that its election on behalf of Freight "should be held to result in a valid election for the liabilities of Appellant as transferee of the transferee of the assets of the Nebraska corporation". This assignment of error lacks merit. Clearly, since there was a total failure to comply with the statute and the applicable regulations, no rational basis exists for granting petitioner any relief under § 99 of the Technical Amendments Act of 1958.

The amount of interest due is also in issue. The Tax Court found that, inasmuch as the value of the transferred assets was sufficient to cover the deficiency plus interest, interest accrued from March 15, 1953, the due date of Truck's 1952 tax return.

Section 292(a) of the 1939 Code provides that: "Interest upon the amount determined as a deficiency * * * shall be collected as a part of the tax, at the rate of 6 per centum per annum from the date prescribed for the payment of the tax * * *".

Petitioner's position is that it is not liable for interest "prior to service of the Notice of Deficiency to [it], or at the very earliest, the date of the transfer of the assets to [petitioner]".) This contention is keyed to petitioner's argument that the value of the assets did not exceed the liabilities assumed.

We have heretofore demonstrated: (1) that petitioner's transferee liability for

6. Section 99 provides that "an amount received in settlement of any claim against the United States arising out of the taking * * * of possession or control of any motor carrier transportation system owned or operated by the taxpayer shall, at the election of the taxpayer, under regulations prescribed by the Secretary of the Treasury * * * be deemed to be income which was received or accrued in the taxable years during which such motor carrier transportation system was in the possession or control of the United States."

payment of Truck's deficiency arises at law, not in equity, and; (2) that the Tax Court did not err in finding, as a fact, that the value of the assets transferred did exceed the amount of liabilities assumed. Under either theory the Tax Court's finding, with regard to the time from which interest accrued, must be sustained. For authorities supporting the second theory of liability, see and compare, Lowy v. C. I. R., 35 T.C. 393 (1960), cert. denied, 368 U.S. 984, 82 S.Ct. 596, 7 L.Ed.2d 523; Estate of Stein v. C. I. R., 37 T.C. 945, 959–962 (1962); Voss v. Wiseman, 234 F.2d 237 (10 Cir. 1956); Patterson v. Sims, 281 F.2d 577 (5 Cir. 1960); Robinette v. C. I. R., 139 F.2d 285 (6 Cir. 1943), cert. denied, 322 U.S. 745, 64 S.Ct. 1155, 88 L.Ed. 1577; 9 Mertens, Law of Federal Income Taxation, § 53.38.

The decision of the Tax Court is, in all respects, affirmed.