John P. Donohoe, J.
Judgment is granted the plaintiff in the amount of $5,677.60, with interest from the 19th day of May, 1967. The complaint is in all other respects dismissed.
In this action, a contractor sues three individuals and four corporations whom and which the plaintiff alleges stripped two debtor corporations of assets and rendered them judgment proof.
The action is maintained under section 719 of the Business Corporation Law and article 10 of the Debtor and Creditor Law. Plaintiff also claims counsel fees under section 276-a of the Debtor and Creditor Law.
The plaintiff adduced no proof of liability against the defendants Shaffer and Mellen. Plaintiff’s attorney sought leave to withdraw the complaint against them in his post-trial memorandum. Such leave is granted.
The answer contained formal denials that the corporate defendants were corporations. The testimony of the accountant confirmed their corporate existence.
The plaintiff recovered two judgments on May 19, 1967. One was against S. J. M. General Contractors, Inc., in the amount of $3,394.16. The other was against S. J. M. in the amount of $1,283.44. Plaintiff has been unable to collect these amounts because the judgment debtors were defunct. Their insolvency came about in the following way.
Rubin Josephs was, during the period of all the transactions which are in issue, the sole owner of the shares of six corporations which had filed elections with the Internal Revenue Service to be taxed as individuals. These are commonly known as sub-chapter S corporations. The corporations were S. J. M. Builders, Inc., S. J. M. General Contractors, Inc., Blueberry Estates Corporation, Village Homes Rockland Corporation, A. A. A. Electricians, Inc. and Rockland Excavators, Inc. He was also the president of each of these corporations.
*839 Josephs’ solely owned corporations were engaged in the business of land subdivision, development and house building. Village Homes Rockland Corporation and Blueberry Estates Corporation owned the land. S. J. M. General Contractors, Inc., was a building corporation which was engaged in constructing single-family residences upon property of Blueberry Estates Corporation. It last did such work at the end of 1964 or the beginning of 1965. S. J. M. Builders, Inc., was engaged in the construction of homes upon land of Village Homes Rockland Corp. Its work ended in 1966.
The two corporations which owned the real property financed the construction of houses by obtaining loans from banks.
The total amount of money, which flowed into the treasury of Blueberry Estates Corporation from construction loans, was $813,140. The amount which flowed down to S. J. M. General Contractors from these construction loans was $657,150.
Of the total amount received by Blueberry Estates, Inc., in construction loans, $155,990 was never paid to S. J. M. General Contractors.
The total amount of money which flowed into the treasury of Village Homes Rockland Corporation from construction loans was $1,214,950. The amount which flowed down to S. J. M. Builders, Inc., from these construction loans was $902,350.
Of the total amounts received by Village Homes Rockland Corporation in construction loans, $312,600 which was available for payment to S. J. M. Builders, Inc., was never paid to it.
The various building loan agreements which were introduced as Exhibits 9 through 28, under which the two land owning corporations obtained funds for construction, contained the following provision, in words or substance: 1 ‘ The borrower covenants that it will receive the advances to be secured by said mortgages and will hold the right to receive such advances as a trust fund to be applied first for the purpose of paying the cost of the improvement, and that it will apply the same first to the payment of the cost of the improvement before using any part of the total of the same for any other purpose.”
In the years during which these transactions took place, the debtor corporations’ financial statements showed cash balances in excess of the amounts of the judgments which were recovered against them on May 19, 1967. In spite of that, the accountant for all of the corporations testified that judgments recovered by creditors named Sappah and Maggiola wiped out their balances. He had not prepared financial statements for the periods during which these judgments were claimed to have been paid *840 and could not say how much they amounted to. Moreover, it did not appear that Josephs had taken the tax advantages of the claimed losses on these subchapter S corporations against other income. No such returns were offered in evidence.
Josephs determined, by himself, how much money was to be paid by the corporations which received construction loans to the corporations which performed the work.
Blueberry Estates showed profits in the years 1964-1967. In the year which ended on April 30,1966, its books showed taxable income of $35,748. Meanwhile, S. J. M. General Contractors, which performed the construction work for Blueberry Estates, apparently operated profitably also. In June, 1966, its books showed retained earnings of $4,233.07. The firm accountant testified, and the books showed that these “ earnings ” were paid out “ in the form of additional payments on bills due to trade creditors and/or judgments ”, He could not state specifically what had become of these assets.
The activities of Village Homes Bockland and S. J. M. Builders fall into the same pattern and generally parallel those of Blueberry Estates and S. J. M. General Contractors. Village Homes Bockland owned the land and obtained the construction loans. S. J. M. Builders built the houses, Josephs alone determined how much Village Homes Bockland would pay S. J. M. Builders. On April 30, 1966, the financial statement shows that this judgment debtor corporation had undistributed earnings of $2,278.51, capital of $3,000, and retained earnings of $40.66. The same statement shows that in the ensuing year the entire assets were drained off in officers’ advances, so that at the date of entry of the judgment, the corporation was defunct.
Josephs was the sole shareholder in each of these subchapter S corporations. He dealt with the finances of each as he saw fit and the profits were his, individually.
Section 273 of the Debtor and Creditor Law says: “Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration.”
Section 274 of the Debtor and Creditor Law says: “Every conveyance made without fair consideration when the person making it is engaged or is about to engage in a business or transaction for which the property remaining in his hands after the conveyance is an unreasonably small capital, is fraudulent as to creditors and as to other persons who become creditors during *841 the continuance of such business or transaction without regard to his actual intent. ’ ’
The defendant Josephs rendered the two judgment debtor corporations insolvent at a time when the plaintiff was a creditor or when the plaintiff was performing work which would plainly place it in a creditor status. In doing so he violated both section 273 and section 274 of the Debtor and Creditor Law. His transfer of the assets of the debtor corporations was fraudulent as to the plaintiff, as a matter of law.
The plaintiff also claims relief under section 276 of the Debtor and Creditor Law, which provides: “ Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors.”
The applicability of section 276 determines, in turn, the applicability of section 276-a, under which the court may grant reasonable attorneys’ fees to the defrauded creditor of one who conveys property with actual intent to defraud.
The effect of the withdrawals of assets from the two judgment debtor corporations was to deprive the plaintiff of recovery. That fact alone does not establish actual intent to defraud. The evidence shows that the defendant Josephs was a manipulator of six corporations, four of which he maneuvered in the scheme here in issue. He obtained the benefits of insulation of the various phases of his venture from each other so as to achieve the optimum effect of limited liability. At the same time he enjoyed the benefits of individual tax treatment. In spite of that, and in spite of the fact that he rendered the two judgment debtor corporations insolvent, the evidence has not shown, clearly and convincingly, that he intended actually to defraud the plaintiff. It cannot, therefore, be found that he did so. (Lee v. State Bank & Trust Co., 54 F. 2d 518, cert. den. 285 U. S. 547.) Consequently, the court may not grant the attorneys ’ fees.
Despite the plaintiff’s failure to prove actual intent, it may obtain relief under the statute which provides relief from con-, veyances in which intent is presumed in law.
Section 278 of the Debtor and Creditor Law says:
VI. Where a conveyance or obligation is fraudulent as to a creditor, such creditor, when his claim has matured, may, as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase, or one who has derived title immediately or mediately from such a purchaser.
*842 ‘ ‘ a. Have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim, or
‘ ‘ b. Disregard the conveyance and attach or levy execution upon the property conveyed.
“ 2. A purchaser who without actual fraudulent intent has given less than a fair consideration for the conveyance or obligation, may retain the property or obligation as security for repayment.”
It has been held consistently that the provisions of this section authorize the rendition of a money judgment against the transferee of the property. (Shugerman v. Sohn, 255 App. Div. 866 ; Gruenebaum v. Lissauer, 185 Misc. 718, affd. 270 App. Div. 836 ; Brown Packing Co. v. Lewis, 185 Misc. 445 ; Henry v. First Nat. Bank of Ardsley, 110 N. Y. S. 2d 115.)
The plaintiff’s case is grounded not only on article 10 of the Debtor and Creditor Law, but upon section 719 of the Business Corporation Law as well. That statute provides: 1 ‘ 719. Liability of directors in certain cases: (a) Directors of a corporation who vote for or concur in any of the following corporate actions shall be jointly and severally liable to the corporation for the benefit of its creditors or shareholders, to the extent of any injury suffered by such persons, respectively, as a result of such action;
(1) The declaration of any dividend or other distribution to the extent that it is contrary to the provisions of paragraphs (a) and (b) of section 510 (Dividends or other distributions in cash or property).”
Subdivision (a) of section 510 provides as follows: “ (a) A corporation may declare and pay dividends or make other distributions in cash or its bonds or its property, including the shares or bonds of other corporations, on its outstanding shares, except when currently the corporation is insolvent or would thereby be made insolvent, or when the declaration, payment or distribution would be contrary to any restrictions contained in the certificate of incorporation.”
The defendant Josephs’ conduct violated these statutes, as well as the provisions of article 10 of the Debtor and Creditor Law. Such conduct created a cause of action which the plaintiff could enforce against him. (David McDonough, Inc. v. Berger, 22 Misc 2d 646 [decided under the predecessor section 58 of the Stock Corporation Law] and the authorities therein cited.)