HARTLEY F. SATNICK, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent LENORE SATNICK, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Satnick v. Commissioner
Docket Nos. 6757-72, 6758-72.
United States Tax Court
T.C. Memo 1978-289; 1978 Tax Ct. Memo LEXIS 224; 37 T.C.M. (CCH) 1217; T.C.M. (RIA) 78289; July 27, 1978, Filed Harold Greenberg, for the petitioners. Theodore J. Kletnick and Richard S. Kestenbaum, for the respondent. TANNENWALD
MEMORANDUM FINDINGS OF FACT AND OPINION TANNENWALD, Judge: In these consolidated cases, respondent determined that each petitioner is liable, as a transferee of Hartley Jewelers, Inc., for deficiencies in income tax and additions thereto as follows: Additions to tax
Sec. 6651(a)
Sec. 6653(a) Year
Income tax
IRC 1954
IRC 1954
1962
$ 1,671.26
$ 417.82
$ 83.56
1963
2,282.39
570.60
114.12
1964
1,394.77
348.69
69.74
1965
3,248.08
812.02
162.40
1966
1,270.93
254.19
63.55
$ 9,867.43
$ 2,403.32
$ 493.37
Petitioners have conceded the *226 correctness of the deficiencies and additions thereto, leaving for decision whether petitioner Hartley F. Satnick is liable as a transferee and whether Lenore Satnick is liable as a transferee of a transferee [1] for the income tax deficiencies, additions to tax, and interest thereon of Hartley Jewelers, Inc. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulations of facts and exhibits attached thereto are incorporated herein by this reference. Hartley F. Satnick (Hartley) and Lenore Satnick (Lenore), husband and wife, resided in Woodmere, New York, at the time of filing the petitions herein. Hartley Jewelers, Inc. (the corporation) was a New York corporation which was organized in 1960. It has been liquidated and dissolved. Hartley was the sole shareholder, president, and a director *227 of the corporation. The other officers were Lenore and her father, David Feinberg. Lenore was also a director. From May 9, 1960, until dissolution, the shareholder, officers, and directors of the corporation remained the same. The corporation was engaged in the retail sale and repair of costume jewelry and watches. Hartley is a certified master watchmaker, licensed by the Bureau of Standards, Washington, D.C., and performed all of the corporation's repair work. The corporation's only office was a store located at 50 Court Street in the business district of Brooklyn, New York.
In the first half of 1967, an Internal Revenue Agent contacted Hartley for the purpose of determining whether Hartley Jewelers, Inc. had filed corporate income tax returns for prior years. Hartley responded that his accountant's wife was sick, and that his books were not up-to-date and that it would not be possible to meet with his accountant for some time. Returns for the years 1962 through 1966, showing no tax due, prepared by an accountant, were later filed on June 27, 1967. The tax returns for 1962 through 1966 all showed an opening and closing inventory of $ 32,000. Subsequently, respondent determined *228 deficiencies and penalties, to which Hartley, as president of the corporation, agreed on February 18, 1971. On December 31, 1967, the corporation decided to liquidate and dissolve. Shortly thereafter, assets of the corporation were transferred in liquidation to Hartley, consisting of the following: Value
Cash
$ 3,828.72
Store fixtures and automobile
1,000.00
Inventory
23,000.00
Total
$ 27,828.72
The corporation filed a final corporate income tax return for 1967 showing an opening inventory of $ 32,000 and a closing inventory of $ 23,000. A certificate of dissolution was executed on February 2, 1968, and filed with the Secretary of the State of New York in March 1971. After the corporation was dissolved, Hartley continued without interruption to operate the business at the same location, using the assets he received on liquidation. On January 9, 1968, petitioners filed a Business Certificate for Partners under the name of Hartley Jewelers Co. (the company). At about the same time, they opened a bank account for the company, instructing the bank to honor the signature of either petitioner as a partner. Lenore did not work in the store, did not participate *229 in management of the company, and never received a distribution of any kind from the company. At no time has the company filed a partnership return. In 1968, petitioners reported profits from the company on their joint individual income tax return, based on Schedule C attached in the name of Hartley alone, which showed an opening inventory of $ 23,000. [2]
OPINION Petitioners have conceded the correctness of respondent's determination of income tax deficiencies, additions to tax, and interest thereon against the corporation. Moreover, there is no dispute that (a) there was a transfer to Hartley, (b) the transfer was not made for adequate consideration, (c) at the time of the transfer, or by virtue of the transfer, the corporation was insolvent, and (d) respondent was under no duty to proceed first against the corporation. Thus, the only issues for decision are whether each of the petitioners received assets of the corporation as a transferee and the amount of transferee liability, if any. At the outset, we deal with petitioners' contentions that Hartley *230 received the corporate assets as an agent, i.e., as a fiduciary subject to an express trust which required him to use those assets to pay off creditors and that, since this is what he did with the assets, respondent has no claim against him as a transferee. We disagree. To be sure, the corporate minutes state that the transfer of the assets was made to Hartley in an agency capacity. But we are unimpressed with such self-serving evidence, particularly in light of what actually transpired. Hartley did not systematically dispose of the corporate assets and pay off its liabilities with the proceeds therefrom. Rather, he used the corporate assets to continue operating the same business at the same place for his personal benefit. See Grieb v. Commissioner,36 T.C. 156, 165 (1961). See also United States v. Plastic Electro-Finishing Corp.,313 F. Supp. 330 (E.D.N.Y. 1970). Under the circumstances, we think it apparent that he paid the corporation's liabilities to its trade creditors so that they would deal with him as a successor to the corporation and not because he felt obligated to do so as agent of a dissolved corporation. Petitioners have the *231 burden of proof on the issue of whether Hartley received the assets as agent of the corporation rather than in his capacity as stockholder. Compare Alexander v. Commissioner,27 B.T.A. 1210, 1214 (1933), with Grieb v. Commissioner,supra at 163. We conclude that they have failed to carry their burden and that, accordingly, Hartley received the assets in his own behalf and is a transferee. In passing, we note that, had Hartley been found to be an agent of the corporation, his liability in this capacity would be determined under section 6901(a)(1)(B), [3] dealing with liabilities of fiduciaries for unpaid taxes under 31 U.S.C. sec. 192. The legal analysis governing such liability is distinct from that of a transferee and would have had to have been separately asserted by respondent in order to be considered. See Leuthesser v. Commissioner,18 T.C. 1112 (1952); Estate of McKnight v. Commissioner,8 T.C. 871 (1947); Grieb v. Commissioner,supra.
*232 We now turn our attention to the questions involving petitioners' liabilities as transferees. [4]Section 6901(a) enables the respondent to collect taxes from a transferee of property who is liable, at law or in equity, for the taxes of his transferor. Respondent has the burden of proving that petitioners are liable as transferees. Section 6902. The existence and extent of transferee liability is determined by the law of the state in which the transfer occurred -- in this case, New York. Commissioner v. Stern,357 U.S. 39, 45 (1958); Estate of Miller v. Commissioner,42 T.C. 593, 598 (1964). *233 Under New York law, a conveyance made without fair consideration is fraudulent as to creditors if made by a person who is or is thereby rendered insolvent. N.Y. Debt. & Cred. Law sec. 273 (McKinney 1945). [5] Such conveyances may be set aside by creditors. N.Y. Debt. & Cred. Law sec. 278 (McKinney 1945). [6]
*234 Petitioners argue that New York law "limits the extent of the liability to the actual value of the assets transferred and also circumscribes the extent of transferee liability by limiting collection to the assets actually transferred or funds derived from the sale of such assets." We reject this argument to the extent that it purports to assert that New York law limits respondant's section 6901 remedy to a strictly in rem proceeding and requires a tracing of the transferred assets or their proceeds. While respondent's recovery under section 6901 is limited to the value of the assets transferred, it permits a "money judgment" to the extent of that value as of the date of transfer. Any contrary conclusion would run counter to the myriad of cases in which deficiencies against transferees have been sustained without any finding that they were still in possession of the transferred property. Even the two cases upon which petitioners rely, and which involved legal issues totally different from those involved herein, recognize that a transferee can be held liable to the extent of the value of *235 the property transferred. See United States v. Floersch,276 F.2d 714, 717 (10th Cir. 1960); De West Realty Corp. v. I.R.S. of the United States,418 F. Supp. 1274, 1280 (S.D.N.Y. 1976). Moreover, although we are satisfied that the "money judgment" issue is governed by Federal law (see Ginsberg v. Commissioner,305 F.2d 664, 669-670 (2d Cir. 1962), affg. 35 T.C. 1148 (1961)), we note that New York law supports our conclusion. See Crete Concrete Corp. v. Josephs,66 Misc. 2d 837, 322 N.Y.S. 2d 935 (Sup. Ct. 1971), modified on other grounds 39 App. Div. 2d 543, 332 N.Y.S. 2d 601 (2d Dept. 1972). See also Ginsberg v. Commissioner,supra.
The basic thrust of petitioners' argument is that Hartley is entitled to credit against any transferee liability to the extent that the assets he received were used to pay creditors of the corporation. He asserts that under New York law a transferee, even though privy to the fraud, is entitled to a credit for amounts paid to a transferor's creditor, provided such creditor is not a party to the fraudulent scheme, relying especially *236 on Empire Lighting Fixture Co. v. Practical Lighting Fixture Co.,20 F.2d 295, 298 (2d Cir. 1927), and Vinlis Construction Co. v. Roreck,67 Misc. 2d 942, 325 N.Y.S. 2d 457, 464 (Sup. Ct. 1971), affd. 43 App. Div. 2d 911, 351 N.Y.S. 2d 648 (2d Dept. 1974). We reject petitioners' contention. It has been repeatedly held that a transferee is not entitled to credit in determining his transferee liability for payment made to debtors of the transferor unless he establishes that such creditors have priority over the Government. Mendelson v. Commissioner,52 T.C. 727, 740 (1969), and cases collected thereat; Sharp v. Commissioner,35 T.C. 1168, 1178 (1961). Although most of these cases were decided prior to Commissioner v. Stern,supra, they retain their vitality to the extent that state law does not require a different result. Mendelson v. Commissioner,supra.The New York cases cited by petitioners appear to have involved situations where a choice was made simply between *237 general creditors of equal standing and not between a general creditor and a creditor who is entitled to a priority. Nor have we found any indication of New York law which might dicate that such priority would not be recognized in the context of determining whether Hartley should be entitled to credit for payments of debts of the corporation which, as far as the record reveals, had no equivalent or higher priority status than the tax claims of the United States involved herein. [7] See Mendelson v. Commissioner,supra.It is also beside the point that the tax claims of the corporation asserted herein had not materialized and were unknown to Hartley at the time the assets were distributed to him (although there is sufficient indication in the record herein from which it could be inferred that he either knew or should have known at that time that there was a potential liability of the corporation for additional taxes). See Kreps v. Commissioner,42 T.C. 660, 670 (1964), affd. 351 F. 2d 1 (2d Cir. 1965); Brown v. Commissioner,24 T.C. 256, 267 (1955). See also Bellin v. Commissioner,65 T.C. 676, 683 (1975). *238 Finally, we emphasize that there is no evidence that Hartley made any payments to himself as a creditor -- which conceivably might have produced a different situation. See, e.g., Mendelson v. Commissioner,supra at 738-739, and cases discussed thereat. Compare *239 Estate of Miller v. Commissioner,42 T.C. 593 (1964), where the taxpayer was held not chargeable as a transferee for amounts received by him and spent currently for the benefit of the corporation rather than to pay previously existing debts but was held so chargeable for amounts used for his personal benefit. Under such circumstances, Hartley might be considered as having furnished adequate consideration for the payment, with the result that respondent would have failed to sustain his burden of proof as to an essential element of transferee liability. Estate of Miller v. Commissioner,supra.See also Holmes v. Commissioner,47 T.C. 622, 626 (1967). Our conclusion that Hartley is not entitled to credit against his transferee liability effectuates a proper synthesis of the provisions of section 6901 and 31 U.S.C. secs. 191 and 192. [8] To hold otherwise would afford an insolvent corporation the opportunity to liquidate and distribute to stockholders and diminish the ability of the Federal Government to realize on its claims for unpaid taxes. Under such circumstances, the remedy provided by 31 U.S.C. sec. 192 *240 would not be available, since a stockholder as such is not considered as falling within the ambit of that section. See Grieb v. Commissioner,supra at 163. Similarly, the remedies provided by N.Y. Bus. Corp. Law secs. 1007 and 719 (McKinney 1963), and the latter's predecessor, N.Y. Stock Corp. Law sec. 15 (McKinney 1951), relied upon by respondent, would appear to be of doubtful applicability. Compare United States v. 58th Street Plaza Theatre, Inc.,287 F. Supp. 475, 498-500 (S.D.N.Y. 1968). See pp. 21-22, infra. *241 Respondent has the burden of proof with respect to the value of assets received by Hartley. Section 6902; Kreps v. Commissioner,supra at 669; Bartmer Automatic Self Service Laundry, Inc. v. Commissioner,35 T.C. 317, 322 (1960). The evidence clearly establishes that Hartley received $ 3,828.72 in cash and store fixtures and an automobile having a value of $ 1,000. The disputed item is the closing inventory of the corporation. To support his assertion that the value of the inventory is $ 23,000, respondent relies exclusively on the closing inventory of $ 23,000 reported on the 1967 income tax return, and the opening inventory of $ 23,000 reported on the Satnicks' 1968 return. Petitioners argue that the accountant who prepared the delinquent returns for 1962 through 1966 used an assumed figure which was unrealistically high. Another accountant, who prepared the 1967 return, testified that he arrived at the $ 23,000 figure by working backwards from the amount of gross profit. However, since the assumed closing inventory from 1966 was used as the *242 opening inventory for 1967, the closing inventory is, according to him, unrealistically high. Petitioners ask us to find that the inventory was worth $ 8,000 to $ 10,000 on the basis of Hartley's testimony. We decline to do so. We found the testimony of Hartley and his accountant to be conflicting, vague, and unconvincing. Hartley offered no satisfactory explanation for his signing returns that reflected an inventory which he now claims was unrealistically high. Under the circumstances, we conclude that the return is the most reliable evidence of the value of the inventory, albeit there is some question as to its accuracy. [9] Cf. Bos Lines, Inc. v. Commissioner,354 F.2d 830, 838-839 (8th Cir. 1965), affg. T.C. Memo. 1965-71. We now turn to respondent's assertion that the company is a partnership of which Lenore is a partner and that Lenore is, therefore, liable as a transferee of a transferee for the tax deficiencies of the corporation. We need not dwell upon the question whether the existence of a partnership interest *243 in Lenore should be determined under Federal or state law, although we are inclined to the view that, where ownership via a "partnership" interest in property, as distinguished from who should be held taxable on the income of the "partnership," is at issue (which is the case herein), state law should be applied under the rationale of Commissioner v. Stern,357 U.S. 39 (1958). Whether we apply Federal or local law, the existence of a partnership is a question of fact, namely, whether, under all the circumstances, Hartley and Lenore intended to, and actually did, join together to conduct the jewelry business. See Luna v. Commissioner,42 T.C. 1067, 1077 (1964); Fullam v. Peterson,21 N.Y.S. 2d 797, 799 (Sup. Ct. 1940). There is no evidence of any partnership agreement between Hartley and Lenore. While the filing of a certificate of partnership raises a presumption that a partnership existed, the presumption may be overcome by evidence to the contrary. See In re Palega's Estate,208 Misc. 966, 145 N.Y.S. 2d 271, 272 (Surr. Ct. N.Y. Co. 1955); N.Y. Gen. Bus. Law sec. 130(6) (McKinney 1968). We think the same *244 approach applies to the bank account designation. In this case, such evidence was forthcoming through testimony that Lenore never participated in the management of the store, never made a capital contribution to the partnership, and never received any profits of the company. Respondent offered no contrary evidence beyond the certificate of partnership and the signature cards. None of the checks of the company submitted in evidence bore Lenore's signature. Respondent also contends that Lenore is a partner by estoppel. See N.Y. Partnership Law sec. 27 (McKinney 1948). [10] That statute seems to dispense with the usual elements of reliance involved in estoppel (see Tide Water Oil Co. v. Commissioner,29 B.T.A. 1208, 1218-1219, 1221 (1934); cf. Haag v. Commissioner,59 F.2d 514 (7th Cir. 1932)), since the filing of the certificate of partnership would appear to be a "representation * * * in a public manner." However, whatever may be her status as to other third parties, Lenore is not a partner by estoppel as to respondent, because respondent is not a person who has given credit to any "actual or apparent partnership." To the extent that respondent *245 extended "credit," it was to the corporation. *246 Finally, respondent contends that Lenore is liable as a transferee because, as an officer and director, she participated in the dissolution of the corporation and violated her duties under N.Y. Bus. Corp. Law secs. 719 and 1007 (McKinney 1963) and N.Y. Stock Corp. Law sec. 15 (McKinney 1951). But her status as an officer or director does not make her a "transferee," because she did not receive any property of the corporation within the meaning of section 6901(a)(1)(A). See C.B.C. Super Markets, Inc. v. Commissioner,54 T.C. 882, 898-899 (1970); Kreps v. Commissioner,42 T.C. 660, 669 (1964), affd. 351 F.2d 1 (2d Cir. 1965). Moreover, whatever liability Lenore may have under such statutes is separate and distinct from that which is encompassed by section 6901(a)(1)(A); to the extent that they provide a basis for proceeding under the provisions of section 6901(a)(1)(B) relating to fiduciaries, they simply are not pertinent to this proceeding. See pp. 15-16, supra. In sum, we hold that Hartley is liable as a transferee of the corporation up to, but not exceeding, the amount of $ 27,828.72. Decision will be entered under *247 Rule 155 in docket No. 6757-72.
Decision will be entered for the petitioner in docket No. 6758-72. Footnotes
1. The statutory notice of deficiency was addressed to Lenore Satnick as transferee. At trial and on brief, however, respondent took the position that she is a transferee of a transferee. She has not objected to respondent's change in theory, and, in any event, it makes no difference for the purposes of this case. See footnote 3, infra↩.
2. The actual amount shown was $ 32,000, but the parties agree that this was a transposition and should be $ 23,000.↩
3. All section references, unless otherwise indicated, are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years in question.↩
4. Section 6901 does not recognize any distinction between a transferee and a transferee of a transferee, except with regard to the statute of limitations. Bos Lines, Inc. v. Commissioner,354 F.2d 830, 834-835 (8th Cir. 1965), affg. T.C. Memo. 1965-71↩. The term "transferee" is sometimes used herein to refer to both types of liability.
5. N.Y. Debt. & Cred. Law sec. 273 (McKinney 1945) states as follows: Sec. 273. Conveyances by insolvent Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration. ↩
6. N.Y. Debt. & Cred. Law sec. 278 (McKinney 1945) states as follows: Sec. 278. Rights of creditors whose claims have matured 1. Where a conveyance or obligation is fraudulent as to a creditor, such creditor, when his claim has matured, may, as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase, or one who has derived title immediately or mediately from such a purchaser. a. Have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim, or b. Disregard the conveyance and attach or levy execution upon the property conveyed. 2. A purchaser who without actual fraudulent intent has given less than a fair consideration for the conveyance or obligation, may retain the property or obligation as security for repayment.↩
7. There is evidence that some small amounts of New York State and New York City taxes of the corporation were paid by Hartley, but petitioners have made no argument that they should be accorded any special consideration, assuming without deciding that state law could elevate the priority of local tax claims to such status for the purposes of this case. See, e.g., United States v. Moore,423 U.S. 77 (1975), and In re States v. Oklahoma,261 U.S. 253 (1923). See also United States v. Moore, 423 U.S. 77 (1975), and In re Wille,61 Misc. 2d 992, 308 N.Y.S. 2d 520 (Sup. Ct. 1968), affd. 31 App. Div. 2d 721, 296 N.Y.S. 2d 283 (1st Dept. 1968), affd. 25 N.Y. 2d 619, 254 N.E. 2d 224↩ (1969), for a discussion of the strong policy considerations involved in the priority accorded tax claims of the United States.
8. Secs. 191 and 192 of 31 U.S.C. read as follows: Section 191. Priority established.--Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed. Section 192↩. Liability of fiduciaries.--Every executor, administrator, or assignee, or other person, who pays, in whole or in part, any debt due by the person or estate for whom or for which he acts before he satisfies and pays the debts due to the United States from such person or estate, shall become answerable in his own person and estate to the extent of such payments for the debts so due to the United States, or for so much thereof as may remain due and unpaid.
9. It is interesting to note that Schedule C attached to petitioners' 1968 return showed a closing inventory of $ 23,750.↩
10. N.Y. Partnership Law sec. 27 (McKinney 1948) states as follows: Sec. 27. Partner by estppel 1. When a person, by words, spoken or written or by conduct, represents himself, or consents to another representing him to any one, as a partner in an existing partnership or with one or more persons not actual partners, he is liable to any such person to whom such representation has been made, who has, on the faith of such representation, given credit to the actual or apparent partnership, and if he has made such representation or consented to its being made in a public manner he is liable to such person, whether the representation has or has not been made or communicated to such person so giving credit by or with the knowledge of the apparent partner making the representation or consenting to its being made. (a) When a partnership liability results, he is liable as though he were an actual member of the partnership. (b) When no partnership liability results, he is liable jointly with the other persons, if any, so consenting to the contract or representation as to incur liability, otherwise separately. 2. When a person has been thus represented to be a partner in an existing partnership, or with one or more persons not actual partners, he is an agent of the persons consenting to such representation to bind them to the same extent and in the same manner as though he were a partner in fact, with respect to persons who rely upon the representation. Where all the members of the existing partnership consent to the representation, a partnership act or obligation results; but in all other cases it is the joint act or obligation of the person acting and the persons consenting to the representation.↩